SMITH vs. GOULD and others.

*February 2 — February 19, 1884.*

EMINENT DOMAIN: HIGHWAYS: DITCHES. *(1) What constitutes a tak-ing of land? (2) What may be taken: non-navigable streams. (3) Statutory remedy exclusive. (4) Who may defend under statutory power: Town supervisors.*

1. A ditch cut by the authorities of a town for the purpose of divert-ing the waters of a stream from a public highway upon which it was encroaching, also diverted such waters from one part of the land of a riparian owner and threw them upon another part thereof in such a way as to change the condition and cut away a portion of the bank. No part of the ditch itself was upon his land. Whether there was a taking of the land of such riparian pro-prietor, for public use, so that compensation must be made there-for, *quære.*

2. A non-navigable stream stands upon the same footing as other private property so far as the right of eminent domain is con-cerned. Except as specially prohibited, all kinds of property may be taken for the public use upon making, or, in case the taking is by towns or municipalities, upon providing, just compensation.

3. Where land is taken by right of eminent domain in the mode pre-scribed by statute, the statutory remedy must be pursued, and an action of tort will not lie.

4. The work of constructing a ditch for the improvement and preserva-tion of a highway was of such magnitude as not to be among the ordinary duties of the overseer of highways, and was performed by a contractor under the direction of the town supervisors who had been authorized to appropriate money for that purpose. In an action against the supervisors, the contractor, and his work-men, for injuries to land resulting from the construction of such ditch, *held* that the defendants might justify their acts under secs. 1236, 1237, R. S.

APPEAL from the Circuit Court for *Monroe* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

There is, and for many years has been, a public highway running north and south on the line between sections 10 and 11, in township 16 N., of range 4 W., being in the town of

Leon, in the county of Monroe, Wisconsin. The plaintiff owns, and did during the time in question, the S. ½ of the N. E. ¼ of said section 10, along upon the east line of which ran said highway. On the northeast corner of that piece of land stood the plaintiff's dwelling-house. On the east side of this highway, and immediately across the road from said dwelling-house, the plaintiff's barns, corn-crib, chicken-house, etc., were situated, on a piece of land during the time in question belonging to the plaintiff, consisting of three and three fourths acres, situated in the N. W. corner of the S. W. ¼ of the N. W. ¼ of said section 11, extending to the center of said highway on the west, and to the north line of said last-described forty acres on the north, and bounded on the southerly and easterly side thereof by the thread of the Little La Crosse river, the same being the boundary line between the said three and three fourths acres of land of the plaintiff, and the lands of one A. F. Smith, lying south of it. This river runs northerly and passes from a point on the east side of the highway, at a considerable distance south of the plaintiff's said land, northerly, and at a short distance east from said highway, until it reaches a point about 251 feet south of said three and three fourths acres, and about 160 feet east of said highway, where (prior to cutting the ditch or canal hereinafter mentioned) it turned abruptly and almost at a right angle to the west, and continued in that direction until it entered the east side of said highway, when it turned abruptly to the north, and ran along in the east side of said highway for nearly 100 feet, and then turned abruptly to the northeast and ran in that direction on the line between the said three and three fourths acres belonging to the plaintiff and the land of said A. F. Smith above mentioned. The said lands of A. F. Smith extended to the center of said highway, and the same constituted the west line thereof.

In November, 1881, the defendant dug a ditch or trench

from the said point where the river turned abruptly toward the highway, through the neck of land belonging to said A. F. Smith, in a northerly direction for a distance of nearly 100 feet, until the same opened into the old channel of said river so running in a northeasterly direction from said highway on the line between the plaintiff and said A. F. Smith, and thereby turned all or nearly all the waters of said river through said ditch or trench, and the said river has ever since continued to run through said ditch or artificial watercourse, and the same has ever since become the channel of said river; and since the same has been dug, the water of the river has substantially ceased to flow around through the bend or ox-bow of the old channel and said highway west of the source and mouth of said ditch or artificial watercourse.

The plaintiff claims to have been greatly damaged by reason of the old channel in the bend or ox-bow west of the new channel being left in the condition in which it is, and the drawing of the water away from that part of the plaintiff's land adjoining the same; and also by the water being thrown through the new channel and across the old onto the southerly side of the plaintiff's land so as to change the bed of the river and the bank from a shelving, sloping, and convenient condition for watering stock, etc., to an abrupt condition with a steep, precipitous bank, and thereby deepening the water, so that the same cannot be used for the purposes they formerly were without great danger, besides cutting away portions of the plaintiff's said bank.

The plaintiff claims he has been damaged in the sum of $1,500, by reason of the matters aforesaid, and he demands judgment for $2,000, with costs.

The answer was as follows :

"1. The defendants admit that said trench or ditch was dug at or about the time stated in the complaint, and the water diverted in part from the old channel of the La Crosse

river, where it ran through a portion of the premises of the plaintiff; but deny that it has damaged the plaintiff or his premises in any sum whatever; and deny all allegations not herein admitted.

"2. Defendants allege for a second defense that the highway leading from the village of Leon to Sparta runs between the house and barns of the plaintiff, mentioned and referred to in the complaint, in about a north and south line, and that the barns are on the east side of the highway, and opposite, or nearly opposite, the dwelling of the plaintiff, which is on the west side of the highway. That the La Crosse river is a large stream, and subject to high floods at different seasons of the year, and its course, previous to the time when the channel was changed as before admitted, was such that at a point about 250 feet south of the barns it butted into said highway, and for a series of years since said highway was first laid out the said river has been encroaching upon and into said highway until at about the time when the channel was changed as admitted, the said river at that point occupied one half of the width of said highway, and the whole bed of the river was inside of the limits of said highway; that the water of said river ran into said highway from nearly an east direction, and made a bend in said highway, so that it occupied nearly one half of the width of such highway for a distance of about 150 feet, and then left the highway, running off in a northeasterly direction. That the river has been several years making the encroachments upon said highway as aforesaid, and the highway authorities in the town of Leon, where said premises are situated, have expended large sums of money in work and repairs to prevent the encroachments of the river into said highway, without success; and it would have been impossible to prevent the encroachments of the river further into said highway, except at great expense yearly.

"That at and about the times when said channel was

Smith vs. Gould and others.

changed, the repairs and work made to prevent the said river from washing away more of said highway had rotted out and given way, so that it was necessary that some action should be taken to prevent further damage to the highway; that the defendants, *Fox, Oswald,* and *White,* were then the duly elected, qualified, and acting supervisors of the town of Leon, where said premises were situated, and J. B. Link[1] was then the duly elected, acting, and qualified overseer of highways in the road district where said premises were situated; that at the annual town meeting of the electors of said town of Leon, for the year 1881, the question of repairing and protecting said highway at the point indicated was discussed, and it was generally considered by the electors then present that the only practical and reasonable way to repair and protect said highway, and prevent further damage to the same by said river, was by turning the channel thereof at or about the place and in the manner it has been changed as alleged in the complaint, and a majority of the electors of said town at said meeting passed a resolution at that time, and at said meeting, giving the supervisors authority to appropriate sufficient money to repair and protect said highway.

"That in accordance with such resolution and the general authority given to them by the statute to direct as to how repairs should be made upon and highways protected, they consulted with the said J. B. Link, overseer of the highways as aforesaid, as to what should be done on the premises, and it was agreed that said highway should be protected by cutting the channel, and turning the water of the river, as it was done, out of and from said highway, and the said supervisors then let the defendant *George H. Gould* the job of digging the ditch and turning the channel of the river, and he did, with the hired assistance of the defendants *Austin,*

[1] J. B. Link, the overseer of highways, was not a party to the action.— REP.

*Snow*, and *Moore*, dig said ditch, and turn the water of the river into the same, and all that any or either of said defendants did in relation to changing the channel of said river, as complained of, was done for the purpose aforesaid, and by right and the authority aforesaid, in a careful and circumspect manner, and was an improvement made solely for the benefit of the public, and with as little injury to the premises of plaintiff as possible, and with no desire to wilfully or wantonly injure him, and with reasonable skill and care, and that said defendants carefully avoided doing any unnecessary injury upon the premises of said plaintiff. That plaintiff, before the said channel was dug, had favored that method of protecting said highway, and did not oppose it, and had notice when it was done, and knew it was done by direction of the said supervisors and said overseer of highways in order to protect and preserve said highway; and he has never applied to the supervisors of said town to appoint appraisers to assess the damages he has sustained, as he is required to do by virtue of section 1237 of the Revised Statutes, if he had considered himself aggrieved and damaged by said work."

After the plaintiff had given evidence tending to prove the allegations of his complaint, and rested his case, the following proceedings were had:

M. D. L. Moore was then called and sworn as witness in behalf of the defendants. The plaintiff here objected to any testimony being given on behalf of the defendants which tended to justify acts complained of in the complaint, and which would have a tendency to sustain the second defense set up in the answer. After due consideration the court ruled that the facts set up in the answer as a second defense did not constitute a defense to the action, and he sustained the objection made by plaintiff's counsel refusing to allow any testimony to sustain the second defense, or defense on the ground of justification; to all of which ruling the de-

fendants duly excepted, and the following proceedings in relation thereto appear of record:

*Plaintiff's Counsel:* We do not object to the making proof regarding the amount of damages, but we object to any testimony for the purpose of justification, on the ground that the facts set up or alleged in the answer do not constitute a defense to this action.

Objection sustained and exception by defendants.

*By Defendants' Counsel:* For the purpose of this action the title to the land is admitted to be in the plaintiff.

*Defendants' Counsel:* I understood the court to decide one thing in this case, that the question of wilfulness did not enter at all.

*The Court:* I don't think it does. . This act was done on purpose, and was wilful in that sense.

*Plaintiff's Counsel:* We do not claim that it was done with the express purpose of injuring *Mr. Smith.*

*The Court:* They are not allowed to introduce any evidence on that; it is a question of actual damages.

At the close of the testimony on the part of the defendants the court charged the jury, among other things, as follows: "The plaintiff had a right to have this stream of the Little La Crosse river flow past his farm in the manner in which nature had made it to flow. He had a right to have it continue to flow as it naturally did flow, and as it had in the past, and if this act of the defendants in digging this ditch, and changing the course of the current of the stream, impaired the use of the stream to the plaintiff, and made the bank less secure, then he was injured by such change, and is entitled to damages." To which charge the counsel for the defendants then and there excepted.

The jury thereupon retired, and, after consultation, returned a verdict in favor of the plaintiff, and assessed his damages at $775. Thereupon the said defendants' counsel

moved said court, upon its minutes, to set aside said verdict, and grant a new trial, for the reason that the court erred in his several rulings against the defendants upon the trial as hereinbefore set forth, and especially because he refused to allow the defendants to introduce testimony to sustain the second defense set up in the answer, and for errors in the charge, as hereinbefore stated. The court overruled said motion, and the defendants' counsel duly excepted. Thereupon judgment was entered on said verdict in favor of the plaintiff and against the defendants, and the defendants appealed therefrom.

For the appellants there were briefs by *Tyler & Dickinson* and *Cameron, Losey & Bunn,* and the cause was argued orally by *Mr. Dickinson* and *Mr. Bunn.* They argued, among other things, that acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, although their consequences may impair its use, are not a taking of property within the meaning of the constitution. *Transportation Co. v. Chicago,* 99 U. S., 635; *Sumner v. Richardson Lake Dam Co.,* 71 Me., 106; *Alexander v. Milwaukee,* 16 Wis., 247. Private property is not so taken when the lands of individual proprietors are washed away by reason of the acts of corporations employed to improve the navigation of a river. *Hollister v. Union Co.,* 9 Conn., 436; *S. C.,* 25 Am. Dec., 36. See, also, *M. C. R. R. Co. v. Mason,* 51 Miss., 234; *Norris v. V. C. R. R. Co.,* 28 Vt., 99; *Black River Imp. Co. v. La Crosse B. & T. Co.,* 54 Wis., 679. Even if there has been a taking of property. for the public use, the statutory remedy is exclusive. *Ely v. Rochester,* 26 Barb., 133; *Smeaton v. Martin,* 57 Wis., 364; *Newcomb v. Smith,* 2 Pin., 131; *Stevens v. Marshall,* 3 id., 203; *Fisher v. Horicon I. & M. Co.,* 10 Wis., 351; *Babb v. Mackey,* id., 372; *Pettibone v. L. C. & M. R. R. Co.,* 14 id., 443; *Ford v. C. & N. W. R. R. Co.,* id., 609; *Stowell v.*

*Flagg*, 11 Mass., 364; *Stevens v. Middlesex Canal*, 12 id., 466; *Rogers v. Bradshaw*, 20 Johns., 735; *Calking v. Baldwin*, 4 Wend., 667.

For the respondent there was a brief by *Morrow & Masters*, and oral argument by *Mr. Morrow*. They contended, *inter alia:* 1. The answer does not state facts sufficient to bring the case within the rule of *Smeaton v. Martin*, 57 Wis., 364. There was here no "entry" upon plaintiff's land to dig any ditch or drain, and no intention on the part of the defendants to "enter upon," "take," or "use" any of plaintiff's land for the purpose of the ditch appeared from the answer. No *necessity* for the ditch is alleged. It is, in effect, alleged that the highway could be protected without it, though at some expense. The saving of such expense could not be such a public necessity as would justify so great an injury to an individual. If, to justify a taking, the necessity must be determined by the supervisors or overseer, such determination must be clearly pleaded. The discussion of the subject at the town meeting was entirely immaterial, and the resolution giving the supervisors authority to appropriate money did not authorize them to proceed as they did. If the work could lawfully be done at all, it could only be done by the overseer of highways or by persons acting under his direction; and it would seem that he must determine the necessity of entering upon or using land, before he can act. Sec. 1236, R. S. But the answer does not show any determination or any action by the overseer in relation to the ditch, or that the defendants were acting under his direction. That part of the answer in relation to knowledge, etc., of the plaintiff, is not such an allegation as is required to show that this act was done by the proper officer or that it was necessary, and is matter which should have been stricken out as surplusage. When a plea relies upon statute authority as a defense, it must allege the facts which it asserts to be so authorized,

and cannot plead generally that the statute was complied with. *Pumpelly v. Green Bay Co.*, 13 Wall., 166. It has frequently been held that the statute must be strictly com-plied with by highway authorities. *Ruhland v. Supervisors*, 55 Wis., 664; *Babb v. Carver*, 7 id., 124; *Austin v. Allen*, 6 id., 134; *Dolphin v. Pedley*, 27 id., 469. 2. That part of the charge which was excepted to is indisputably correct, upon the issue formed by the complaint and the first de-fense set up in the answer. *Gerrish v. Clough*, 48 N. H., 9; *S. C.*, 2 Am. Rep., 165; *Gilmore v. Driscoll*, 122 Mass., 199; *Pettigrew v. Evansville*, 25 Wis., 223; *McClure v. Red Wing*, 28 Minn., 186. 3. Sec. 1236, R. S., does not apply to a case like this. Its purpose is to empower the overseer to *drain* the highway by means of a *ditch*, which must neces-sarily be dug outside of the highway to carry off the water coming or accumulating thereon from any cause or source, as surface water, or water in low, swampy places, such as are ordinarily drained or removed by means of ditches; and this is to be done only when such water impedes travel, or renders the way impassable or dangerous. The words "ditches" or "drains," do not convey to the mind the idea of changing the channel of a large stream of water.

CASSODAY, J. For the purposes of this appeal the answer must be taken as true. It is very evident that the waters of the river were, and for a long time had been, working destruction to the public highway at the point in question. The supervisors of that town were made parties defendant. At the annual town meeting a resolution was passed giving the supervisors authority to appropriate sufficient money to repair and protect the highway from the encroachments of the river. The supervisors and overseer of the district con-sulted and agreed that the highway should be protected by cutting an artificial channel across the neck of land, and thus turning the water of the river through such new chan-

nel, and thereby preventing the same from passing around the bend or into the highway; and that this was, and was regarded by the electors of the town generally as, the only practical and reasonable way to repair and protect the highway and to prevent further damage to the same from the river. Accordingly the supervisors let the contract to one of the other defendants, and the artificial channel was cut by him and his workmen, and the old one filled up according to such contract. Evidence of all these things, and much more, was excluded by the trial court on the ground, as it is said, that the acts of the legislature, under which such improvements were sought to be made, were unconstitutional and void.

This court has recently held, in effect, that the taking of lands under the sections of the statute authorizing the construction of such drains or ditches as may be necessary for the improvement or preservation of highways, even though it may become necessary in doing so to go upon land in the vicinity, not adjacent to such highway, is a taking for a public use within the meaning of the constitution, but that such acts are not unconstitutional merely because they do not provide for actual payment in advance of the taking, since the taxable property of the town or municipality constitutes a pledge or fund to which such owner may resort for payment in the manner prescribed by statute. *Smeaton v. Martin*, 57 Wis., 364, and cases there cited. See, also, *Mercer v. McWilliams*, 1 Wright (Ohio), 132; *Bates v. Cooper*, 5 Ohio, 118; *McCormick v. President of Lafayette*, 1 Carter (Ind.), 52; *Loweree v. Newark*, 38 N. J. Law, 151; *Smith v. Helmer*, 7 Barb., 426. It was there also held, in effect, that the necessity for such taking is to be determined by the legislature, which may, in its discretion, delegate the exercise of such power to town supervisors or overseers of highways. It was also there held, in effect, that such determination by the legislature, or the body or person to whom the exercise

of such power may be thus delegated, is not conclusive as to whether the taking of private property is for a public use; yet, when the use for which it is in fact taken *is public*, then such determination as to the necessity of the taking, is conclusive upon the courts.

The reasons and authorities for such rulings are there given, and need not be here repeated. In that case the ditch on the plaintiff's land was nearly a quarter of a mile distant from the highway; here it is about 150 feet. There the ditch was on the land of the plaintiff; here it is wholly on the land of another, who makes no complaint. There, as well as here, the purpose was to drain water from a public highway, and in both cases it was effectual. There the ditch was to drain wet, marshy ground; here it was to divert, and create for a short distance an entirely new channel for, a river. Here the water is drawn from the highway and from a portion of its accustomed channel, and hence away from that part of the plaintiff's bank and shore bordering upon that part of the river, and thrown more directly and with much greater force upon another portion of the plaintiff's bank and shore, so as to change its condition and formation, and cut away portions of the same. Whether the acts of the defendants in question were a taking of the plaintiff's land, within the meaning of the statute referred to, it is not absolutely necessary here to determine. Upon a hasty examination it would seem that some of the cases in other courts indicate more or less remotely that it is: *Eaton v. B., C. & M. R'y Co.*, 51 N. H., 504; *Hooker v. New Haven & N. Co.*, 14 Conn., 146; *Wabash & Erie Canal v. Spears*, 16 Ind., 442; *Grand Rapids Booming Co. v. Jarvis*, 30 Mich., 309; and other cases that it is not: *Norris v. V. C. R. R. Co.*, 28 Vt., 99; *Transportation Co. v. Chicago*, 99 U. S., 635; *Green v. Swift*, 47 Cal., 536; *Spangler's Appeal*, 64 Pa. St., 387.

The power of the legislature to take, or authorize the tak-

ing, is as broad as the language of the constitution implies. Sec. 13, art. I. Of course, the taking of private property can only be to the extent and in the mode prescribed by statute. The legislature has expressly prohibited the taking of certain grounds and certain kinds of property for a public highway. Sec. 1263, R. S. The express naming of these indicates, by necessary implication, that all other kinds of property may be taken for public use by making, or, in case the taking is by towns or municipalities, by providing, just compensation. *Smeaton v. Martin, supra.* If there was a taking here, it certainly does not come within the statutory prohibition. "Strictly speaking, there is no such thing as an extinction of the right of eminent domain. If the public good requires it, all kinds of property are alike subject to it, as well that which is held under it as that which is not." *N. Y., H. & N. R. R. Co. v. B., H. & E. R. R. Co.*, 36 Conn., 198, and cases there cited.

In *Spangler's Appeal, supra,* a bill was filed to restrain the canal company from diverting the water in a stream from the plaintiff's mill, but it was held that the company was entitled to so divert under the right of eminent domain given to it by the legislature.

In *Hazen v. Essex Co.*, 12 Cush., 476, 477, Chief Justice SHAW said: "It is a fallacy to suppose that a mill or mill privilege is, in principle, exempt from being taken under the power of eminent domain over any other private property. An impression of that kind may have arisen from the rule applicable to the general mill acts. It stands on a different principle. Thus, each successive proprietor on the watercourse has an equal right to use the power of the stream through his own land, to erect a mill, which is for the general benefit; he, therefore, who first appropriates it by erecting a mill, shall be held secure against the claims of another who has not so appropriated the stream. . . . But this principle can have no influence on the legislature, in deter-

mining what is necessary to be taken for public use; the value of a mill can as well be compensated in money as that of any other property so taken." See, also, *Trustees of College Point v. Dennett*, 5 Thomp. & C., 217.

In *Central Bridge Corp. v. Lowell*, 4 Gray, 474, it was held that "a franchise to build and maintain a bridge may be taken for a highway whenever the legislature deem that the public exigencies require it, reasonable compensation being made."

In the case of a navigable stream the bed of the river is a public highway of the state, and within its absolute control, subject only to the rights of commerce. *Green v. Swift*, *supra; Black River Imp. Co. v. La Crosse B. & T. Co.*, 54 Wis., 659. But the stream in question is not navigable. This being so, it stands on a common footing with other private property, so far as the right of eminent domain is concerned. Thus, in *Glover v. Powell*, 10 N. J. Eq., 211, it was "held that the legislature had the right to authorize the obstruction of the creek, there being nothing in the case to show that its navigation was demanded by the public interest." Certainly, all property is held upon the implied condition that it may be reclaimed by the government, in the manner and upon the terms prescribed by law, whenever the public necessities so demand. Here there was no laying out and opening of a new public highway, but simply the preservation and restoration of an old one. There is no claim that there was any taking of property within the limits of the highway, except by diverting the river therefrom, but that there was what is claimed to be equivalent to a taking outside of such limits. Assuming, therefore, for the purposes of this appeal, that there was such a taking, either by diverting the river from the highway or otherwise, yet the only remedy therefor is the mode prescribed in the statute and fully pointed out in *Smeaton v. Martin, supra*, and cases there cited. See, also, *Spangler's Appeal, supra*.

Since there is a statutory remedy for lands taken for public use in such cases, it is very evident that if the plaintiff's land has in fact been taken for such use, within the meaning of the constitution and the statutes, then he should have pursued that remedy. Certainly an action of tort will not lie against those making such improvement under such statutory power. *Sprague v. Worcester*, 13 Gray, 193.

The claim that the supervisors and their contractor and his workmen cannot defend under the statutory power, seems to be wholly without foundation. It was not, as we now recollect, the overseer, but the supervisors, who were proceeded against in *Smeaton v. Martin, supra.* As there indicated, the overseer is under the control of the supervisors in such matters, and must execute all lawful orders given by them. The improvement in question seems to have been of such magnitude as to require a special vote of the town meeting to raise money for the payment of the same. It does not appear to have been among the ordinary duties of the overseer. He does not seem to have been a necessary party. For such extraordinary improvements the supervisors seem to be the moving and acting party. Their responsibilities are like the commissioners of highway in New York, where the courts have taken a similar view of the matter. *Bartlett v. Crozier*, 17 Johns., 447. In that case Chancellor KENT said "that, with respect to bridges, at least, if not to highways, the commissioners, and not the overseers, are the persons properly responsible to the public. With respect to bridges, the duty of the overseers (if any they have on that subject, independent of the orders of the commissioners) is to apply the moneys they may have received from commutation and fines (when not directed otherwise) in improving the roads and bridges. . . . Such a limited and precarious duty in the reparation of bridges cannot, as I apprehend, afford ground for a private action against the overseer from any and every person who may

happen to be injured by a bad bridge within his district."

From what has been said it sufficiently appears that, in our opinion, it was error to exclude the evidence upon the defense of justification set up in the answer; and for the same reasons the portion of the charge excepted to must be held to be error.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.