CITY OF MILWAUKEE, Respondent, vs. SCHOMBERG and others, Appellants.

*February 6—March 4, 1952.*

For the appellants there was a brief by *Poss, Toelle & Schuler* and *Raymond H. Kleis,* all of Milwaukee, and oral argument by *Mr. H. W. Schuler* and *Mr. Kleis.*

For the respondent there was a brief by *Walter J. Mattison,* city attorney, and *Clyde E. Sheets,* assistant city attorney, and oral argument by *Mr. Sheets* and *Mr. Ralph J. Chmurski,* assistant city attorney.

MARTIN, J.   In their counterclaim defendants allege (1) that plaintiff is attempting to take defendants' property for

private rather than public purposes, (2) the existence of a contract under the terms of which plaintiff agreed to refrain from opening streets through defendants' property, and (3) threatened trespass on defendants' land for the purpose of installing sewers and other public services prior to condemnation.

We will consider these propositions in reverse order. Defendants claim that the city, pursuant to notices sent to them, threatens to enter upon the land before the condemnation proceedings are completed. These proceedings have been commenced and the city has filed a disclaimer of any intention to enter upon the premises before the issue of public necessity has been tried. Under the circumstances it is unnecessary to deal further with this proposition.

The second allegation, the existence of the contract under the terms of which plaintiff agreed to refrain from opening streets through defendants' property, is founded upon the following facts: On January 4, 1936, the city acquired from Richard Schomberg and Julia, his wife, an easement for the construction and maintenance of storm and sanitary sewers over a part of their land. One of the considerations expressed in the instrument is the agreement on the part of the city that it will not, without the consent of the grantors, open a street through any of the property described. Defendants contend that the city's contemplated action is in violation of its agreement, and that although the easement agreement is superseded by the right to condemn, the city must first either return the land covered by the easement, restore it to its original condition, or pay for the easement granted. It is not alleged in the complaint that the city has done either of these things.

Under this second allegation of the counterclaim, if the contract with the city (whereby it agrees to refrain from taking any property of the defendants) is valid, the defendants would be entitled to injunctive relief. However, the

plaintiff's right to acquire by condemnation a right in the land beyond that which it has under the terms of the easement is not affected by the fact of the existing easement. 18 Am. Jur., Eminent Domain, p. 716, sec. 88. Unless restricted by constitutional or statutory provisions, "if the public good requires it, all kinds of property are alike subject to it [condemnation], as well that which is held under it as that which is not." *Smith v. Gould* (1884), 59 Wis. 631, 643, 18 N. W. 457.

Nor is the city prevented from taking the land by reason of its agreement not to do so. The power of eminent domain is inalienable and cannot be surrendered, even by legislation, to say nothing of the power of other governmental agencies to impair it or bargain it away.

"The power [of eminent domain] is inalienable and no legislature can bind itself or its successors not to exercise this power when public necessity and convenience require it." *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 87, 219 N. W. 428.

"By no form of contract or legislative grant can the state surrender its right to take any property within the limits of the state when it may be required for the public use." 1 Nichols, Eminent Domain (2d ed.), p. 75, sec. 22.

See also 18 Am. Jur., Eminent Domain, p. 636, sec. 7; 29 C. J. S., Eminent Domain, p. 782, sec. 4; 4 McQuillin, Mun. Corp. (2d ed.), p. 456, sec. 1578; 6A Fletcher, Cyc. Corp. (perm. ed.), p. 580, sec. 2917; *United States v. Highland Falls* (2d Cir. 1946), 154 Fed. (2d) 224; *Riden v. Philadelphia, B. & W. R. Co.* (1943), 182 Md. 336, 35 Atl. (2d) 99; *Trustees of Phillips Exeter Academy v. Exeter* (1940), 90 N. H. 472, 27 Atl. (2d) 569; *Southern Indiana Gas & Electric Co. v. Boonville* (1939), 215 Ind. 552, 20 N. E. (2d) 648; *Titusville Amusement Co. v. Titusville Iron Works* (1926), 286 Pa. 561, 134 Atl. 481.

Defendants cite Nichols as authority for their contention that to entitle the city to exercise its power it must first

either return the donated land or restore it to its original condition or pay for the easement granted before condemnation may be instituted. What Nichols says in that regard might be construed as giving the owner some right to claim for breach of its agreement, a point we are not called upon to decide in this case. Nichols does say, however, that "in no case has the validity of such a contract been sustained and damages for breach of it awarded." 1 Nichols, Eminent Domain (2d ed.), p. 78, sec. 22.

The remaining allegation of the counterclaim, that plaintiff is attempting to take private property for private rather than public purposes, is the gist of the city's action. It is for the express purpose of determining public necessity and must be tried to a jury. The trial court was correct in holding that this allegation was a conclusion which is not admitted by the demurrer. In *Wilton v. County St. Johns* (1929), 98 Fla. 26, 39, 123 So. 527, 65 A. L. R. 488, it was said:

"But the mere categorical denial of the answer that the construction or excavation of the drainage ditch was for a public use, or the mere allegation that it was *not* for a public use, was hardly compatible with the rules of good pleading. This allegation was in the nature of a mere legal conclusion of the pleader. The answer should have gone further and alleged the facts supporting this conclusion."

Defendants argue that *Schumm v. Milwaukee County* (1951), 258 Wis. 256, 45 N. W. (2d) 673, supports their right to an injunction, but the case is not in point. There the action was brought by the property owners and the complaint alleged facts regarding the contract between Milwaukee county and the Milwaukee County War Memorial Center, Inc. In granting the injunction the court stated that the contract was so replete with uncertainties and contingencies that the property might never be used for a public purpose. Here the complaint states that use of the land sought to be condemned is for public streets. Public neces-

sity is what the plaintiff is seeking to prove in the present action.

We do not see that the defenses alleged constitute a counterclaim. Sec. 263.14, Stats., provides:

"(1) A defendant may counterclaim any claim which he has against a plaintiff, upon which a judgment may be had in the action.

"(2) The counterclaim must be pleaded as such and the answer must demand the judgment to which the defendant supposes himself entitled upon his counterclaim."

Upon the facts alleged, there being no grounds for injunctive relief as stated above, defendants would not be entitled to any judgment except a dismissal of the plaintiff's complaint. The rule is well stated in 49 C. J., Pleading, p. 319, sec. 387:

"A cross complaint presenting the same issue that is presented by the complaint is not contemplated by the code, nor by the rules at common law or in equity, and such cross complaint, and any admissions therein, will be disregarded. Also a counterclaim merely alleging a cause of action identical with plaintiff's is insufficient."

Defendants further contend that the complaint should be dismissed because it fails to allege the adoption of the preliminary resolution by a three-fourths vote of the members of the common council, as required by sec. 3 (1) of ch. 275, Laws of 1931, known as the Kline Act. Sec. 7 (2) of that act provides what the complaint shall contain:

"It shall be sufficient to state under subsections (2) and (3) of section 263.03 of the statutes that the city has decided to take the property, describing the same, and that the taking is necessary for the public improvement, which may be briefly described, and that the city demands that the necessity of such taking be established by the verdict of a jury. . . ."

No requirement is therein made that the complaint shall set forth the majority by which the preliminary resolution

was passed. In any event, the pleading of the ultimate fact that the resolution was adopted presumes it was properly adopted, and it is a matter of defense to show any impropriety in the adoption.

*By the Court.*—Order affirmed.