Albert I. NEGUS, Jr., Plaintiff-Respondent,

v.

MADISON GAS & ELECTRIC COMPANY, a Wisconsin corporation, Defendant-Appellant,

ILLINOIS CENTRAL GULF RAILROAD COMPANY, a Delaware corporation, Defendant-Respondent.

Court of Appeals

*No. 81–1871. Submitted on briefs October 11, 1982.—Decided February 23, 1983.*
(Also reported in 331 N.W.2d 658.)

For the defendant-appellant the cause was submitted on the briefs of *William T. Rieser* and *Robert Horowitz* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the plaintiff-respondent Albert I. Negus, Jr., the cause was submitted on the brief of *Thomas G. Ragatz, Richard S. Florsheim* and *David J. Harth* of Madison.

For the defendant-respondent Illinois Central Gulf Railroad Company, the cause was submitted on the brief of *James C. Herrick* and *Barbara J. Swan* and *Brynelson, Herrick, Gehl & Bucaida* of Madison.

Before Gartzke, P.J., Bablitch, J. and Dean, J.

GARTZKE, P.J.   We granted leave to Madison Gas and Electric to appeal an order granting the plaintiff Negus partial summary judgment. The order appealed from requires MG&E to move an underground cable from property owned by Negus. Illinois Central Gulf Railroad sold the property to Negus after the cable was installed. The issues are whether the Railroad assigned to Negus its right to compel MG&E to move the cable and, if so,

whether the trial court erred in granting specific performance to enforce that right. We conclude that the assignment was made but that Negus is not entitled to specific performance. We therefore reverse the order.

The documents supporting the motions of MG&E, Negus and the Railroad for summary judgment establish the following history:

In 1966 the Railroad licensed MG&E to lay an electric cable under the Railroad's property, for which MG&E agreed to pay an annual fee of $1,765.20 and to modify its installation to accommodate any change desired by the Railroad.[1] The 1966 agreement was expressly made binding on the parties' assigns, except that an assignment by MG&E did not bind the Railroad without its prior written consent.

---

[1] Paragraph five of the 1966 license agreement provides:

Licensee agrees at any time, or from time to time, at its own expense, upon request of the Division Superintendent of the Railroad Company, to make such change or changes in said poles, wires, anchors, guy rods, overhanging crossarms, push poles and guy wires, or the location of any of them, as may be necessary in the opinion of said Division Superintendent to accommodate any change or improvement which Railroad Company may desire to make in or upon its property. Licensee shall at its expense take such measures as may be necessary and adequate in connection with its property or the property of Railroad Company to protect facilities of Railroad Company and those of others using its property from interference by induction, conduction, physical contact or otherwise attributable to the exercise by Licensee of the license granted to it. For the purpose of this agreement any other companies' circuits on the pole line where circuits used by Railroad Company are located will be considered as Railroad Company's facilities. In case Licensee shall fail within thirty (30) days after notice from Railroad Company to make such change or changes in said poles, anchors, guy rods and guy wires, Railroad Company shall have the right, at its option, to make such change or changes, or remove said poles, wires, anchors, guy rods and guy wires from said property at the risk and expense of Licensee.

September 23, 1975 the Railroad conveyed a part of the property on which the cable was installed to Negus. The quitclaim deed reserved to the Railroad:

[T]he right for the continued maintenance, replacement and use of all existing . . . electric power lines, wires and other utilities and easements on said premises whether or not of record including the repair, reconstruction and replacement thereof and Grantee [Negus] agrees not to interfere with the rights herein reserved or any facilities used pursuant thereto.

The same day the Railroad advised MG&E of the sale to Negus by letter stating that effective September 26, 1975 the Railroad's interest in the 1966 license agreement, as it affected the property sold to Negus, had been assigned to Negus. The Railroad asked MG&E to indicate acceptance of the assignment by signing and returning a copy of the letter. A copy was sent to Negus. MG&E received the letter October 2, but never indicated acceptance of the assignment.

September 24, 1975 the Railroad sent its quitclaim deed to Negus. The letter of enclosure stated that a copy of the 1966 license agreement was attached, "together with the assignment of that agreement as it affects the property you are buying." In fact, the Railroad attached a copy of the agreement but not the assignment. Negus never received the assignment referred to in the letter.

December 31, 1975 MG&E and the Railroad entered another license agreement, consolidating several earlier license agreements under which MG&E maintained cable on the Railroad's various properties. The 1975 agreement granted MG&E a license for its cable under Negus' land and other land "in perpetuity." The 1975 agreement expressly supersedes the 1966 agreement. The Railroad retained only limited rights to require MG&E to move its

structures.[2] According to MG&E, the 1975 agreement extinguished the Railroad's right, which it had reserved in the 1966 agreement, to require MG&E to relocate the cable. A map attached to and made part of the agreement includes a notation stating, "[u]nderground cable rights only per agreement #83400 dated 8–23–66 [the 1966 agreement], interest assigned to A.I. Negus."

The parcel Negus purchased from the Railroad was adjacent to his factory. January 1977 Negus asked

---

[2] Paragraph three of the 1975 license agreement provides:

This license is subject to the rights of the Railroad, including its successors and assigns, to the extent it does not interfere with the Licensee's use as provided herein, to continue to use, occupy, and enjoy any or all of the property covered by this license and the use of all tracks, facilities, and other structures upon or beneath the surface of, or above, the property. Should Railroad deem it necessary or appropriate, in order to continue the operation of the Railroad, to renew, replace, repair, or alter any of its tracks, structures, properties, facilities, or appurtenances, or to construct new ones, or change the operation of its tracks, structures, properties, facilities, or appurtenances, and in connection therewith the same shall require a relocation or change of any facilities installed by Licensee hereunder, the Licensee shall as soon as possible complete, at its sole risk, cost, and expense, all changes or relocations to the satisfaction of the authorized representative of Railroad. It is understood that such relocation shall be made to some location on Railroad's property. It is understood, however, that in the event Licensee requests Railroad to alter its facilities in order to eliminate the necessity of requiring change or relocation of Licensee's facilities and Railroad, at its sole discretion, agrees to alter its facilities, Railroad shall perform all work necessary for the alteration of its facilities at the sole cost and expense of Licensee and Licensee shall reimburse Railroad in an amount equal to the additional cost resulting from such alteration immediately upon presentation of a bill.

Should any facilities of Licensee require repair or renewal, Licensee shall, as soon as possible, make such repair or renewal at its own expense. Railroad shall have the right, but not the duty, to require Licensee to make such repair or renewal. Such right shall terminate upon discontinuance of Railroad's operation.

MG&E to move its cable so that he could expand his operations onto his new parcel. MG&E refused. February 27, 1978 the Railroad and Negus executed an "acknowledgement and assignment," described later in this opinion.

When MG&E again refused to move the cable, Negus commenced this action. He sought an order requiring MG&E to move its cable and damages for MG&E's refusal to move the cable, and later amended his complaint to assert a claim against the Railroad.

All parties moved for summary judgment. The trial court found it was undisputed that the Railroad had intended to assign its interest in the 1966 license agreement to Negus. The court concluded that the circumstances surrounding the transaction supported the conclusion that an assignment had been made. The court held that the December 1975 license agreement between the Railroad and MG&E was ineffective as to the land previously conveyed to Negus. The court awarded Negus specific performance of the 1966 agreement and ordered MG&E to remove or relocate the cable. MG&E appealed.

1. *Assignment*

The parties agree that Negus has a claim against MG&E only if the Railroad's rights in the 1966 agreement were assigned to him. MG&E contends that the documents supporting its motion for summary judgment show that no assignment occurred, that the 1975 license agreement superseded the 1966 agreement, and that under the 1975 agreement MG&E cannot be compelled to move its cable. Alternatively, MG&E argues that if the parties' intent is material, summary judgment is inappropriate because that intent is in dispute.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Sec. 802.08(2), Stats.

We apply the standards set forth in sec. 802.08 in the same manner as the trial court. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 760, 300 N.W.2d 63, 69 (1981). If the only issue is the legal effect of a document and the material facts are undisputed, that effect may be determined on summary judgment. *Pattermann v. Whitewater*, 32 Wis. 2d 350, 359, 145 N.W.2d 705, 709–10 (1966).

Negus concedes that the 1966 agreement created an easement rather than a license because the rights it created are not revocable at the will of the grantor. *Van Camp v. Menominee Enterprises, Inc.*, 68 Wis. 2d 332, 344, 228 N.W.2d 664, 670 (1975). Unlike a license, an easement is an interest in land. *Hunter v. McDonald*, 78 Wis. 2d 338, 343, 254 N.W.2d 282, 285 (1977) ; *Vicker v. Byrne*, 155 Wis. 281, 285, 143 N.W. 186, 188 (1914).

The assignment of an easement as an interest in land is governed by ch. 706, Stats. Sec. 706.01(1). Section 706.-02(1) provides in relevant part:

Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:
(a) Identifies the parties ; and
(b) Identifies the land ; and
(c) Identifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered ; and
(d) Is signed by or on behalf of each of the grantors ; and

. . . .

(g) Is delivered. . . .

A "conveyance" is "a written instrument, evidencing a transaction governed by this chapter, which satisfies the requirements of s. 706.02." Sec. 706.01(3).

The deed does not evidence an assignment to Negus of the Railroad's interest in the easement. On the contrary, the deed reserved to the Railroad "the right for the continued maintenance, replacement and use of all existing . . . electric power lines, wires and other utilities and easements." We reject Negus' contention that this language simply reflects that the Railroad conveyed the property subject to existing easements and reserved for Negus the rights under those easements. The deed plainly reserves those rights to the Railroad.

We reject the contention by the Railroad and Negus that the deed plus the September 23 letter to MG&E plus the September 24 letter to Negus constitute a conveyance under sec. 706.02(1), Stats., assigning the Railroad's interest in the 1966 agreement. Section 706.02(2) provides:

A conveyance may satisfy any of the foregoing requirements of this section:
(a) By specific reference, in a writing signed as required, to extrinsic writings in existence when the conveyance is executed; or
(b) By physical annexation of several writings to one another, with the mutual consent of the parties; or
(c) By several writings which show expressly on their faces that they refer to the same transaction, and which the parties have mutually acknowledged by conduct or agreement as evidences of the transaction.

Examining those documents collectively, we determine they do not satisfy the formal requirements of sec. 706.02 (1), Stats. The deed does not assign the Railroad's interest. The September 23 letter to MG&E recites that the Railroad has assigned its interest in the 1966 agreement to Negus but is not itself an assignment. Although Negus received a copy of that letter, nothing of record indicates the copy was signed on behalf of the Railroad. The September 24 letter to Negus states that the assignment

was attached, but the letter itself is not an assignment and no assignment was attached.

We turn to the February 1978 "acknowledgment and assignment." It identifies the parties as grantor and grantee. It describes the land with particularity. It is signed on behalf of the Railroad and by Negus. The Railroad delivered the document to Negus through his lawyer. The remaining question is whether the document sufficiently identifies the interest conveyed, as required by sec. 706.02(1)(c), Stats. We conclude that it does.

The "acknowledgment and assignment" provides in relevant part:

WHEREAS, it is acknowledged that the intention of the parties at the time of the September 23, 1975 conveyance was that Grantor was to assign and set over unto Grantee all of Grantor's interest in and to a certain non-cancellable license agreement with Madison Gas & Electric Company, Archive #83400.
NOW, THEREFORE, Grantor assigns, transfers and sets over to Grantee *all rights of Grantor insofar as it lawfully may with Madison Gas & Electric Company affecting the above-described premises only,* dated December 31, 1975 designated as License No. X–36124, I.C. Archive. (Emphasis added.)

The meaning of an unambiguous document is a matter of law which can be determined independently by an appellate court. *American Mut. Liability Ins. Co. v. Fisher,* 58 Wis. 2d 299, 303–04, 206 N.W.2d 152, 155 (1973). Ambiguity arises only if the document is reasonably susceptible of different meanings. *Bank of Sun Prairie v. Opstein,* 86 Wis. 2d 669, 676, 273 N.W.2d 279, 282 (1979).

We conclude that the document identifies the Railroad's interest in the 1966 agreement to Negus as the interest conveyed. The record establishes that the license agreement referred to in the whereas clause as "Archive

#83400" is the 1966 agreement. The granting clause assigns "all rights of Grantor insofar as it lawfully may with Madison Gas & Electric Company affecting the above-described premises only . . . ." The only rights the Railroad had in the premises arose out of the 1966 agreement. Those rights therefore constitute the interest conveyed.

We find no merit in the argument that the 1975 agreement extinguished the Railroad's right under the 1966 agreement to require MG&E to move the cable, and that therefore the Railroad could not assign that right in 1978. After conveying the fee to Negus, the Railroad could no longer convey an easement in it. *Hollabaugh v. Kolbet,* 604 P.2d 1359, 1363 (Wyo. 1980); *Aebischer v. Zobrist,* 371 N.E.2d 1003, 1006 (Ill. App. 1977); *Von Meding v. Strahl,* 30 N.W.2d 363, 368 (Mich. 1948). Consequently, after conveying the fee to Negus, the Railroad could not enlarge MG&E's easement. For the Railroad to give up or extinguish its right to compel removal of the cable would substantially enlarge MG&E's rights under the easement. If the 1975 agreement purported to accomplish that result, it accomplished nothing. The rights of the Railroad under the 1966 agreement therefore survived, and those rights were assigned to Negus in 1978.

Therefore, although we disagree with the trial court's reasoning, we conclude that it correctly found that the Railroad had effectively assigned to Negus its rights under the 1966 agreement.[3] Under that agreement, MG&E is required, at its own expense upon request of the Railroad, to make such changes as may be necessary "to accommodate any change or improvement which Railroad Company may desire to make in or upon its property." Substituting Negus as the Railroad's assignee, the agree-

---

[3] We will affirm a judgment if the result was correct even if the reasons were wrong. *State v. Alles,* 106 Wis. 2d 368, 391, 316 N.W.2d 378, 388 (1982).

ment requires MG&E to move the cable at Negus' request, to accommodate Negus' building plans.

We turn to the issue whether Negus is entitled to specific performance of this agreement.

2. *Specific Performance*

Whether specific performance should be granted is discretionary with the trial court. *Edlin v. Soderstrom,* 83 Wis. 2d 58, 70, 264 N.W.2d 275, 281 (1978). Appellate review of a trial court's decision to grant or withhold specific performance is limited to determining whether the court abused its discretion. *Id.*

MG&E contends that the court erred as a matter of law because Negus is limited to the statutory remedies of inverse condemnation under sec. 32.10, Stats., and damages under sec. 893.17, Stats. 1977. Discretion is abused if the trial court acts on an erroneous view of the law. *First Wis. Nat. Bank of Oshkosh v. KSW Inv.,* 71 Wis. 2d 359, 364, 238 N.W.2d 123, 126 (1976).

Negus argues that MG&E's argument on appeal is inconsistent with its position before the trial court. In its amended answer, MG&E raised as an affirmative defense the allegation that Negus' sole remedy was an action in inverse condemnation under sec. 32.10, Stats. MG&E argued to the trial court that sec. 32.10 provided the sole statutory remedy and that sec. 893.17, Stats. 1977, was inapplicable. MG&E now concedes that the latter statute does apply. We may, but usually will not, consider issues raised for the first time on appeal. *Terpstra v. Soiltest, Inc.,* 63 Wis. 2d 585, 593, 218 N.W.2d 129, 133 (1974). While MG&E takes a different position on appeal concerning which statutory remedies are available, it has consistently asserted that the availability of statutory remedies precludes other relief. Accordingly, we reject Negus' contention that MG&E has raised a new issue on appeal which precludes its consideration as a matter of right.

"The law in this state is well settled that where statutory remedies are provided, the procedure prescribed by the statute must be strictly pursued to the exclusion of other methods of redress." *Essock v. Cold Spring*, 10 Wis. 2d 98, 104, 102 N.W.2d 110, 113 (1960). Because MG&E is a corporation engaged in the business of transmitting or furnishing heat, power and electric light to the public, it possesses condemnation power for the construction and location of its lines and for additions or extensions to its plant. Secs. 32.02(5) and 32.06, Stats. *Benka v. Consolidated Water Power Co.*, 198 Wis. 472, 474–75, 224 N.W. 718, 719–20 (1929), and *Price v. Marinette & M.P. Co.*, 197 Wis. 25, 27, 221 N.W. 381, 381 (1928), held that because the activities of a public utility possessing condemnation power effected a "taking" of an interest in land, the landowner's sole remedy was an action in inverse condemnation under sec. 32.04, Stats. 1927, now sec. 32.10. *Zombkowski v. Wisconsin River Power Co.*, 267 Wis. 77, 80, 64 N.W.2d 236, 238–39 (1954), recognized the existence of another statutory remedy available to the landowner: the right to sue the utility for damages under sec. 330.17, Stats. 1953, subsequently sec. 893.17, Stats. 1977.[4]

Negus does not dispute MG&E's right to condemn his land for purposes of laying the cable. Negus nevertheless argues that MG&E should be bound by its election to acquire rights in the Railroad's land by contract rather than through condemnation. The law is otherwise. In *Milwaukee v. Schomberg*, 261 Wis. 166, 52 N.W.2d 151 (1952), the defendant landowners granted Milwaukee a sewer easement, in exchange for the city's agreement not to open a street through the land without the defendants' consent. Contrary to that agreement, the city later com-

---

[4] Section 893.17, Stats. 1977, was repealed. Sec. 28, ch. 323, Laws of 1979. MG&E concedes that Negus' remedy under sec. 893.17, Stats. 1977, was not affected by that repeal.

menced the condemnation proceedings for the purpose of laying streets over defendants' land. The *Schomberg* court held that the contract with the city did not bar condemnation, stating:

> [T]he plaintiff's right to acquire by condemnation a right in the land beyond that which it has under the terms of the easement is not affected by the fact of the existing easement. . . .
>
> Nor is the city prevented from taking the land by reason of its agreement not to do so. The power of eminent domain is inalienable and cannot be surrendered, even by legislation, to say nothing of the power of other governmental agencies to impair it or bargain it away.
>
> "The power [of eminent domain] is inalienable and no legislature can bind itself or its successors not to exercise this power when public necessity and convenience require it." *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 87, 219 N.W. 428, [433].
>
> "By no form of contract or legislative grant can the state surrender its right to take any property within the limits of the state when it may be required for the public use." 1 Nichols, Eminent Domain (2d ed.), p. 75, sec. 22.

*Schomberg*, 261 Wis. at 168–69, 52 N.W.2d at 152.

When the Railroad and MG&E entered into the 1966 agreement, the land was exempt from condemnation because it was owned by the Railroad. Sec. 32.03(1), Stats. After the sale to Negus, the land became subject to condemnation. Granting Negus specific performance of the agreement with the Railroad would, in effect, abrogate MG&E's condemnation power, a result prohibited by *Schomberg*.

Because Negus must pursue a statutory remedy available to him, the trial court erred in concluding that specific performance was an available remedy. The order granting specific performance therefore must be reversed.

*By the Court.*—Order reversed and cause remanded for further proceedings.