George T. Markos, Jr. and Catherine T. Hubert-Markos, Plaintiffs-Appellants,

v.

William R. Schaller, Karen L. Schaller and Town of Hamilton, Defendants-Respondents.†

Court of Appeals

*No. 02–1824. Submitted on briefs January 10, 2003.— Decided July 3, 2003.*

2003 WI App 174

(Also reported in 668 N.W.2d 755.)

† Petition to review denied 10-1-03.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Bryant Klos* of *Klos, Flynn & Papenfuss – Chartered*, La Crosse.

On behalf of the defendants-respondents William R. Schaller and Karen L. Schaller, the cause was submitted on the brief of *James W. McNeilly, Jr.*, La Crosse.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J.  George T. Markos Jr. and Catherine T. Hubert-Markos appeal a judgment of the circuit court declaring a portion of McClintock Road discontinued under Wis. Stat. § 80.32(2) (1997–98)[1] and, therefore, private property belonging to William and Karen Schaller. The Markoses argue that the disputed portion of McClintock Road, providing access to property owned by the Markoses, remains a public highway because it has not been "entirely abandoned" within the meaning of § 80.32(2). We agree with the Markoses and, therefore, we reverse.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

471

## Background

¶ 2.  The following facts are undisputed.[2] The Markoses and the Schallers each own parcels of land in the Town of Hamilton. The controversy in this case centers on a small part of McClintock Road that crosses the Schaller property and can be used to gain access to the Markos property. To avoid confusion, we will consistently refer to the two properties as the "Schaller property" and the "Markos property," even when discussing activity occurring during prior ownership.

¶ 3.  The following diagram omits several details, but it presents the features necessary to resolve this dispute. It shows the relevant portions of the Schaller property and the Markos property. The portion of McClintock Road shown with no shading is paved with blacktop. The parties agree this unshaded portion is a "public highway." The portion shown with shading is gravel. This shaded area is the disputed portion of McClintock Road.

---

[2] Neither party suggests that any of the facts are disputed with respect to any issue germane to our decision. In particular, nothing in the Schallers' brief rebuts the Markoses' reliance on testimony showing that the disputed portion of McClintock Road was used continuously since 1951 to access the Markos property. The Schallers themselves assert in their appellate brief that "[t]here is no question that the [disputed portion of McClintock Road] was used as an access to the [Markos property] from 1951 to the time of trial."

The blacktop portion of the road passing through the Schaller property is about 200 feet long. The gravel portion of the road is approximately 40 feet long. All agree that prior to 1951, the entire length of McClintock Road running across the Schaller property was a public highway.[3]

¶ 4. Prior to 1971, a predecessor of the current owners of the Schaller property owned both the Schaller property and the Markos property and this owner used McClintock Road, including the disputed portion, to access the Markos property. In 1971, the split occurred creating the Schaller property and the Markos property. Thereafter, a series of people owned the two properties.

¶ 5. The entire portion of McClintock Road passing through the Schaller property was gravel until

---

[3] Obviously, McClintock Road is not a "highway" as that term is commonly used. However, the statutory term for a public road is "public highway" and we will use the statutory term. We also note that although the public nature of the blacktop portion of McClintock Road on the Schaller property was disputed before the circuit court, it is now conceded that the blacktop portion of the road is a public highway.

1977. In 1977, the unshaded portion indicated in the diagram was first blacktopped. The Town has not maintained the disputed portion of McClintock Road since 1951 and the owners of the Schaller property have, from time to time, maintained this portion of the road by using their tractor and grader to add gravel and level the road.

¶ 6. As explained above, until the properties were separated in 1971, both the paved and unpaved portions of McClintock Road were used by the owner of the Schaller property to access the Markos property because that owner owned both parcels. In 1971, a man named Bazzell Byers purchased the Markos property, and from 1971 to 1996 Byers used the disputed portion of McClintock Road at least once a year to access the Markos property. Karen Schaller testified that Byers used the road with the permission of the owner of the Schaller property. In addition, Byers and a neighbor named Robert Ranney testified that from 1971 to 1996, they and several other persons used McClintock Road to gain access to the Markos property for various reasons.

¶ 7. The timing is not clear, but at some point the Town stopped plowing snow on the full length of McClintock Road crossing over the Schaller property. After McClintock Road was blacktopped, the Town snowplow pushed snow to the end of the blacktop portion of McClintock Road, thereby blocking the disputed portion of the road for some time periods during winter. Byers testified that this was not a problem while he owned the Markos property because he did not desire access to the Markos property during the winter months.

¶ 8. The Schallers purchased their property in 1976. Karen Schaller testified that "occasionally" other

people used McClintock Road to access the Markos property, but if the Schallers didn't catch them on the way through they would "catch [them] going back out if we hadn't given them permission" to use the road. Karen Schaller testified she could sometimes tell that other persons had used McClintock Road without their permission to access the Markos property because vehicle tracks would be visible.

¶ 9. In 1996, a new owner of the Markos property, Timothy Wood, used McClintock Road to access his property. Wood used the road approximately six times during the two years he owned the property.

¶ 10. The Markoses purchased the Markos property from Wood in 1998. At that time, a truck was parked across the disputed portion of McClintock Road, blocking access to the Markos property. The ensuing dispute between the Markoses and the Schallers eventually prompted the Markoses to file an action for declaratory judgment in the circuit court seeking a determination of the status of both parts of McClintock Road crossing the Schaller property. There were several issues before the circuit court, but on appeal there is only one: whether the gravel portion of McClintock Road crossing the Schaller property remains a "public highway." The circuit court ruled that this portion of McClintock Road has been abandoned and is now owned by the Schallers. The circuit court stated:

> [In regard to] the town road . . ., I think that the use of that road, and I'm taking into account that there [are] gates on both ends, that the use of the road was either with permission from the Schallers or without their consent . . . . They could have sealed the fence entirely, but then that would have meant that they couldn't let Mr. Byers through when they wanted him to. But the people who were going in and out of the land to the

northeast of the Schaller homestead . . . were in many instances doing it without permission.

The circuit court found that no highway funds had been expended on the disputed portion of the road since 1951 and that "any improvements that have been done there have been done by the Schallers or their predecessors in the property." The court concluded that the disputed portion of the road became the property of a prior owner of the Schaller property in 1956.

### *Discussion*

■

¶ 11.  The resolution of this case involves application of Wis. Stat. § 80.32(2) to undisputed facts. The application of a statute to undisputed facts is a question of law that we review *de novo. See State v. Wilke,* 152 Wis. 2d 243, 247, 448 N.W.2d 13 (Ct. App. 1989).

¶ 12.  Wisconsin Stat. § 80.32(2) provides, in pertinent part:  "any highway which shall have been entirely abandoned as a route of travel, and on which no highway funds have been expended for 5 years, shall be considered discontinued."[4] Because no highway funds have been expended on the disputed portion of the road

---

[4] The full text of Wis. Stat. § 80.32(2) reads:

> Except as provided in sub. (5), every highway shall cease to be a public highway at the expiration of 4 years from the time it was laid out, except such parts thereof as shall have been opened, traveled or worked within such time, and any highway which shall have been entirely abandoned as a route of travel, and on which no highway funds have been expended for 5 years, shall be considered discontinued.

for more than five years, the question here is whether the disputed portion of the road has been "entirely abandoned."[5]

¶ 13.  The Schallers contend, albeit indirectly, that a portion of a public highway may be "entirely abandoned" if the owners of the land the public highway crosses treat the highway as private property. They argue that the disputed portion of McClintock Road had been "entirely abandoned" by 1956 even though it was used by the owners and by another party with "consent" of the owner because the owner "could have sealed" off the road entirely. The Schallers rely on evidence indicating that the Town stopped maintaining the disputed portion of the road, that the Schallers and their predecessors treated the disputed portion of the road as their private property, and that a number of people believed the disputed portion of the road was private property.

■

¶ 14.  The Schallers' reasoning is circular. Under this reasoning, the owner of land over which a public highway lies may begin treating the public highway as a private road, permit his or her actions to mislead others into believing the road is private and, thereby, convert the public highway to a private road. The flaw in this analysis is that it includes no point in time at which the owner obtains the right to treat the public

---

[5] The parties assume that the phrase "entirely abandoned" in Wis. Stat. § 80.32(2) requires abandonment for five years, but they do not discuss or provide authority for this proposition. We stress that we do not address the question of what length of time a portion of road must be abandoned to be "entirely abandoned." Rather, we assume, without deciding, that yearly use is sufficient to avoid abandonment within the meaning of § 80.32(2).

highway as his or her private property. An owner may not convert a public highway to a private road by taking control of a road and leading others to believe that they need permission to use it, even when the state or local government has discontinued maintenance of the road.

██

¶ 15. We next determine whether the disputed portion of McClintock Road was "entirely abandoned" because there was a time period during which only the owner of the Schaller property used the road to access the Markos property. The Schallers admit in their appellate brief that the disputed portion of McClintock Road "was used as . . . access to the [Markos property] from 1951 to the time of trial." The Schallers assert, however, that from 1956 to 1971, the *only* documented use of the disputed portion of McClintock Road was by the owners of the Schaller property. Based on this factual assumption, the Schallers proffer the legal contention that a public highway is "entirely abandoned" if it is used only by the owner of the land over which the highway lies. In the Schallers' view, a contrary interpretation of "entirely abandoned" is unreasonable because it would mean that owners of property, encompassing a public highway on which no public funds are spent, would have to "refrain from using the road . . . in order to [ensure] that the road does not remain a public highway."

¶ 16. The Markoses, relying on *Lange v. Tumm*, 2000 WI App 160, 237 Wis. 2d 752, 615 N.W.2d 187, respond that under the relevant language of WIS. STAT. § 80.32(2), the identity of the user is irrelevant. We agree with the Markoses.

¶ 17. In *Lange*, we addressed the meaning of "entirely abandoned" under WIS. STAT. § 80.32(2), and explained that "if a highway 'was traveled by such of the

public as had occasion to use it' that is sufficient to keep the highway from being entirely abandoned." *Lange*, 237 Wis. 2d 752, ¶ 7 (citation omitted). In *Lange*, a public highway crossed on to Lange's land and ended there. *Id.*, ¶ 2. No funds had been expended on the portion of the road contained within Lange's land for over five years. *Id.*, ¶ 3. The circuit court declared that the portion of the road on Lange's land was discontinued, concluding that although Lange, his family members, and others continued to use the road, "Lange's use did not constitute 'the type of public use required' to keep a highway from being abandoned." *Id.*, ¶ 4. We reversed and remanded because there were unresolved factual issues regarding the use of the road. Lange's allegations that his family and others continued to use the road created a factual dispute unsuitable for resolution by summary judgment. *See id.*, ¶ 8.

¶ 18. The importance of *Lange* to the matter before us is that in *Lange* we rejected the proposition that an owner's use of the road was insufficient to prevent the road from being considered abandoned. We explained: "Even if only [the owner's] family and guests used the highway, that could be sufficient to keep the highway from being entirely abandoned .... In considering whether the highway was open to the public, it is irrelevant that it was only used by a small portion of the public." *Id.*, ¶ 10. We also noted "that under § 80.32, if property owners are the only members of the public who desire to use a highway, they can keep the highway from becoming entirely abandoned by continuing to use it." *Id.*, ¶ 3 n.2. Accordingly, we reject the Schallers' argument that use by a property owner does not constitute use by "the public."

¶ 19. It is understandable that the Schallers came to believe that they owned the disputed portion of

McClintock Road. The Town stopped maintaining the section of road and the Schallers and their predecessor owners used their own construction equipment and materials to maintain it. Other persons, including the immediate prior owner of the Markos property, apparently believed the Schallers owned the road. However, the statutory question is whether a road has been "entirely abandoned," not whether parties reasonably believe a road is private property.[6]

¶ 20.   Based on the undisputed facts in the record before us, we declare that the disputed portion of McClintock Road has not been "entirely abandoned," as that term is used in Wis. Stat. § 80.32(2).

*By the Court.*—Judgment reversed.

■■■■■■■■■

---

[6] We note that the statutes provide a procedure to follow if private citizens wish to discontinue a public highway, despite its continued use. *See* Wis. Stat. § 80.02.