COURT OF APPEALS
DECISION
DATED AND FILED

November 12, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP827**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV3

IN COURT OF APPEALS
DISTRICT III

JOHN P. WERLER AND NANCY H. WERLER,

PLAINTIFFS-RESPONDENTS-CROSS-APPELLANTS,

V.

DOUGLAS BERENDS,

DEFENDANT-APPELLANT-CROSS-RESPONDENT.

APPEAL and CROSS-APPEAL from an order of the circuit court for Burnett County: DANIEL J. TOLAN, Judge. *Affirmed in part; reversed in part and cause remanded with directions.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1   PER CURIAM. Douglas Berends appeals and John P. and Nancy H. Werler cross-appeal from the circuit court's order, entered after a bench trial, concluding, among other things, that the Werlers do not have an easement over Berends' property.   Berends argues that the court erred by failing to unequivocally state that the Werlers have no easement to any part of Berends' property, by ruling that the Werlers have access over Berends' lot to their existing driveway, by not granting Berends the right to access a portion of the Werlers' property, and by not ordering the Werlers to remove a pole barn and a stone support structure that Berends claims were erected in violation of zoning setback requirements.  The Werlers, for their part, assert that the court erred by concluding that the Werlers do not have a valid easement over Berends' property to access a public highway.

¶2   For the reasons that follow, we conclude that the Werlers have a valid easement over Berends' property; thus, we reverse the circuit court's order on that basis and remand the matter for the court to enter a revised order consistent with this opinion.  We affirm the court's order as to the remaining issues.

## BACKGROUND

¶3   This case involves a dispute over an interest in real property.  At issue are four parcels of real property, which are located on Tabor Lake in Burnett County, Wisconsin.  At the present time, Berends owns the northernmost parcel

(the Berends Lot), and the Werlers own three parcels located directly to the south (Werler Lots 1, 2, and 3).[1]

¶4 Historically, the lots were accessible by a roadway, which ran along the eastern boundary line of the Berends Lot and Werler Lots 1 and 2 and ran through Werler Lot 3 (hereinafter, Old Tabor Lake Road). Although Old Tabor Lake Road was located on private property, the Town of Swiss (the Town) maintained the roadway. In the early 1990s, the Town built a new roadway, moving the location of the road further to the east of the Berends Lot and Werler Lots 1, 2, and 3, so that the road no longer cut through the eastern part of Werler Lot 3 but instead ran through its southern part (hereinafter, Tabor Lake Drive).

¶5 The Werlers' cabin is located on Werler Lot 2, which has a driveway that connects to Old Tabor Lake Road at the end of their eastern lot line. Thus, after Tabor Lake Drive was opened, the Werlers still needed to use Old Tabor Lake Road to access their property,[2] whereas Berends had access to his property from the north. It is undisputed that Berends owns the property under Old Tabor Lake Road lying north of Werler Lot 3 and east of Werler Lots 1 and 2.

¶6 Once Tabor Lake Drive opened, the Town eventually stopped maintaining Old Tabor Lake Road. According to the testimony presented at trial,

---

[1] Until 1967, Emil and Pearl Mares (Mares) owned all four of the lots. Between 1967 and 1974, they—and later Pearl alone—sold all four parcels to Berends' and the Werlers' predecessors in title. The Berends Lot was conveyed by warranty deed to Berends in 1990, and Werler Lots 1, 2, and 3 were conveyed by warranty deed to the Werlers in 1992.

[2] In contrast, Berends testified that the Werlers have "a 1960[s] driveway" that "goes all the way [south] down to the lake, which you can't see because of the trees," that "[they] could refurbish and use." Berends was unable to identify the location of that driveway on the trial exhibits, however.

the Town last patched the asphalt on Old Tabor Lake Road in 1992 or 1993, and it last plowed the snow in October 1991. Moreover, Berends modified a section of Old Tabor Lake Road on his property by clearing the asphalt and laying down grass seed. The Werlers also installed a gate at the intersection of Old Tabor Lake Road and Tabor Lake Drive on Werler Lot 3 and later added a lock to the gate and boulders on either side.

¶7    Eventually, in June 2007, the Town board voted to vacate Old Tabor Lake Road "subject to" an easement "created in favor of [the Werlers] for ingress, egress and utilities over and across" a portion of the Berends Lot (hereinafter, the 2007 Resolution).[3]    The 2007 Resolution described a forty-foot-wide access easement positioned generally over Old Tabor Lake Road on the Berends Lot, running along the entire eastern edge of Werler Lot 2 and about half of the eastern edge of Werler Lot 1. This easement provided direct access to Werler Lots 1 and 2 from Tabor Lake Drive. It is on this basis that the Werlers claim an access easement over the Berends Lot.

¶8    Thereafter, in 2015, the Werlers decided to build a garage on their property, which appears to have sparked the conflict underlying this case. The Werlers applied for a permit with the Town in 2016, which the Town granted, and they subsequently erected a pole barn near where Werler Lot 1 borders the

---

[3] A town can discontinue a highway by following specific procedures. WIS. STAT. §§ 82.10, 82.11, 82.12 (2021-22); *see also* WIS. STAT. § 82.19 (2021-22). There is no dispute that the Town discontinued Old Tabor Lake Road by the 2007 Resolution, which became a "highway order" within the meaning of § 82.12 (2021-22), by recording it with the Burnett County Register of Deeds on June 27, 2007. *See also* WIS. STAT. § 82.01(3) (2021-22).

All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Berends Lot to the north. To build the pole barn, the Werlers removed trees and grass along their property line bordering the Berends Lot. The pole barn is situated thirty-nine feet from the eastern boundary and ten feet from the northern boundary of Werler Lot 1. The Werlers also built up the ground under the pole barn using soil and installed "riprap" around the base of the pole barn to keep that soil in place.[4] Further, the Werlers created a new driveway area, connecting the pole barn to Old Tabor Lake Road where they claimed an easement.

¶9 According to Berends, the Werlers created three new driveways, and Berends informed them that he objected to the driveways, but construction continued. As a result, Berends began parking approximately eleven to twelve "junk" vehicles to block the Werlers' access to his property, which the Werlers claimed blocked their driveway. The Werlers allege that attempts to discuss the issue with Berends were ignored.

¶10 Therefore, the Werlers brought this lawsuit to determine their easement rights, and Berends responded with counterclaims. Both parties sought declaratory judgments clarifying the existence of an easement and their respective claims of ownership, injunctions barring the other from entering their respective properties, and damages for the other's alleged trespasses. In addition, Berends claimed that the Werlers' pole barn violated setback requirements in the Burnett County Code of Ordinances (the zoning code), that the Werlers had removed trees from his property, and that the riprap was a nuisance.

---

[4] "Riprap" is "a foundation or sustaining wall of stones or chunks of concrete thrown together without order (as in deep water)." *Riprap*, MERRIAM-WEBSTER DICTIONARY, https://merriam-webster.com/dictionary/riprap (last visited Oct. 31, 2024).

¶11 The parties filed cross-motions for summary judgment. After briefing, the circuit court issued its oral ruling,[5] which was memorialized in a written order. Based on the court's finding of material issues of fact, the court denied both Berends' and the Werlers' cross-motions for summary judgment.

¶12 The case proceeded to a bench trial on May 11 and 12, 2021.[6] Thereafter, the circuit court issued its oral ruling on December 20, 2021. The court concluded that the Town never had an easement over the Berends Lot;[7] therefore, the Werlers did not have a valid easement because the Town could not have assigned an easement that it did not have. As a result, the court stated that the Werlers were required to move the new driveway on Werler Lot 1 but that they would still have "access to the existing driveway on Werler Lot 2 over Berends' property." The court further determined that the Werlers owned the property located under Old Tabor Lake Road within Werler Lot 3 and that Berends did not own or have an easement over that area.

---

[5] It does not appear that a transcript of the circuit court's oral ruling, which occurred on August 5, 2020, was included in the record on appeal.

[6] In its oral ruling following the bench trial, the circuit court stated that this was a four-day trial, conducted from May 11-15, 2021. However, only two days' worth of transcripts were included in the appellate record, and CCAP states that the trial occurred on May 11 and 12, 2021.

[7] In reaching this conclusion at trial, the circuit court ordered its "previous finding" at the summary judgment stage—that the Town did have an easement over Old Tabor Lake Road— "vacated." We note that a circuit court does not make factual findings on summary judgment; instead, it simply determines whether there is a genuine issue of material fact for trial. *See Continental Cas. Co. v. Milwaukee Metro. Sewerage Dist.*, 175 Wis. 2d 527, 533-34, 499 N.W.2d 282 (Ct. App. 1993). The court explained in its oral ruling after the trial, however, that its previous "finding was based upon what was believed to be a concession in the parties' pleadings that the Town of Swiss did in fact have an easement."

¶13 The circuit court also rejected Berends' claims that the Werlers' pole barn and riprap violated the zoning code's setback requirements. It ultimately awarded each party $100 in nominal damages for their respective trespass claims and denied punitive damages. The court further awarded Berends $3,000 in damages for the Werlers' removal of trees and vegetation on the Berends Lot but granted no damages for nuisance as a result of stones falling from the riprap. Finally, the court permanently enjoined both parties from using Old Tabor Lake Road on each other's lots. Berends appeals, and the Werlers cross-appeal.

## DISCUSSION

¶14 Following a bench trial, we review a circuit court's decision under a well-established standard. Our review is highly deferential to the court's findings of fact. *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶11, 290 Wis. 2d 264, 714 N.W.2d 530. "On review of a factual determination made by a [circuit] court without a jury, an appellate court will not reverse unless the finding is clearly erroneous." *Noll v. Dimiceli's, Inc.*, 115 Wis. 2d 641, 643, 340 N.W.2d 575 (Ct. App. 1983) (citing WIS. STAT. § 805.17(2)). "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12. "Under the clearly erroneous standard, 'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Id.* (citation omitted). We also search the record for evidence supporting the court's decision. *Id.* In contrast, "[t]his court reviews conclusions of law independently and without deference to the decision of the circuit court." *Id.*, ¶13 (citation omitted).

¶15    On appeal, Berends presents several issues for our review: (1) the circuit court erred "by limiting its finding [that the Werlers did not have an easement] by stating that the Werlers have no easement to only a part of the Berends Lot, leaving a possible interpretation that the Town … did convey to the Werlers an easement to part of the Berends Lot"; (2) the court erred by "ruling that the Werlers have access over part of [the Berends Lot]"; (3) the court erred by not granting Berends the right to a portion of Werler Lot 3; and (4) the court erred by not ordering the Werlers to remove the pole barn and riprap.

¶16    Conversely, the Werlers' cross-appeal presents only one issue: the circuit court erred by ruling that the Werlers do not have a valid easement over Old Tabor Lake Road within the Berends Lot. Given that our resolution of the cross-appeal will resolve or clarify the issues presented in Berends' appeal, we will address the cross-appeal first.

## I. The Werlers' Cross-Appeal

¶17    In their cross-appeal, the Werlers claim that the circuit court erred by concluding that the Town did not have a valid easement over the Berends Lot. As noted previously, *see supra* ¶12 & note 7, during its decisions on the cross-motions for summary judgment, the court concluded that the Town had an easement over the Berends Lot. After trial, the court vacated its previous decision, stating:

> The problem with this case and the [c]ourt's decision is that there is no record of any easement in favor of the Town of Swiss nor any of the written requirements of [WIS. STAT. §] 706.02 creating an easement in favor of the Town of Swiss. Therefore, the [c]ourt's finding that the Town of Swiss had an easement was made in error and is hereby vacated. If there were a valid easement to the Town of Swiss, they could have transferred it to the Werlers.

The court alternatively concluded that the Town could not have granted the Werlers an easement by the 2007 Resolution because the Town had already abandoned Old Tabor Lake Road by that time.

¶18    The Werlers assert that "the circuit court misapplied several statutes and principles of property law" to reach these conclusions. Whether the court properly interpreted and applied the relevant statutes and the case law are questions of law that we review de novo. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273 (statutes); *Movrich v. Lobermeier*, 2018 WI 9, ¶15, 379 Wis. 2d 269, 905 N.W.2d 807 (property law). For the reasons that follow, we agree with the Werlers that the court erred.

¶19    We first address the circuit court's conclusion that no record of an easement to the Town existed. "An easement 'is a permanent interest in another's land, with a right to enjoy it fully and without obstruction.'" *Konneker v. Romano*, 2010 WI 65, ¶25, 326 Wis. 2d 268, 785 N.W.2d 432 (citation omitted). "The 'dominant estate' enjoys the privileges granted by the easement, and the 'servient estate' permits the exercise of those privileges." *Id.* (citation omitted). There are several types of easements, including express easements, prescriptive easements, easements by necessity, and easements by implication. *AKG Real Est., LLC v. Kosterman*, 2006 WI 106, ¶15 n.4, 296 Wis. 2d 1, 717 N.W.2d 835.

¶20    In this case, there is no evidence in the record that the Town was the fee owner of Old Tabor Lake Road, nor is there evidence demonstrating when or how the road was created. The record is silent as to precisely how Old Tabor Lake Road became a public highway or, in other words, how the Town acquired an interest in the road—i.e., whether the Town acquired Old Tabor Lake Road by written grant, mutual agreement, or condemnation. *See* WIS. STAT. § 82.14

(providing that "[u]nless the acquisition can be made by mutual agreement, the town board shall utilize the procedures under [WIS. STAT. §] 32.05 to acquire rights to land for the purpose of laying out or altering a town highway"). Nevertheless, Old Tabor Lake Road is referred to as "town road" in a deed conveying one of the lots in 1968, meaning that Old Tabor Lake Road has existed since at least that time.

¶21 WISCONSIN STAT. § 82.31(2)(a) provides, in pertinent part: "[A]ny unrecorded highway that has been worked as a public highway for 10 years or more is a public highway and is presumed to be 66 feet wide." The term "worked," as used in § 82.31(2)(a), "means action of the town in regularly maintaining a highway for public use, including hauling gravel, grading, clearing or plowing, and any other maintenance by or on behalf of the town on the road." WIS. STAT. § 82.01(11). The parties do not dispute that the Town maintained Old Tabor Lake Road until sometime in the early 1990s. Thus, for the purpose of this decision, how, when, or why Old Tabor Lake Road was created is irrelevant because there is no dispute that Old Tabor Lake Road, prior to the 2007 Resolution, was a public highway.

¶22 Berends argues, however, that satisfaction of WIS. STAT. § 82.31(2)(a) "does not equate to ownership or easement rights." We disagree. A public highway situated across privately owned land creates a public easement of travel, which permits the public to use the highway at will. *See **Walker v. Green Lake County***, 269 Wis. 103, 111, 69 N.W.2d 252 (1955) ("When it is of such character and for such length of time as to establish a highway by prescription or long user, user of land as a highway vests in the public an easement in, or right to use, the land for highway purposes." (citation omitted)); ***Geyso v. Daly***, 2005 WI App 18, ¶9, 278 Wis. 2d 475, 691 N.W.2d 915 (2004) (observing that "members

of the public[] have but an 'easement of passage' in the right-of-way and may use it only for highway purposes" (citation omitted)); *see also* WIS. STAT. § 340.01(22) (defining "[h]ighway" as "all public ways and thoroughfares and bridges on the same. It includes the entire width between the boundary lines of every way *open to the use of the public as a matter of right for the purposes of vehicular travel*" (emphasis added)).

¶23 As the Werlers assert, a public highway on private land represents the "government's interest in land that is possessed by the private fee owner." They explain that "[i]t grants the public the nonpossessory right to enter that private land and to use it as a right-of-way for travel. And it obligates the private fee owner to not interfere with the public's right to do so." Thus, where the government does not own the land underlying a public highway in fee simple, the existence of the public highway satisfies the definition of an easement. *See **Berger v. Town of New Denmark***, 2012 WI App 26, ¶¶13-15, 339 Wis. 2d 336, 810 N.W.2d 833 ("Absent express language to the contrary, our courts presume that the grantor of land to be used for roadways intended to convey only an easement."); ***Village of Brown Deer v. Balisterri***, 2013 WI App 137, ¶15, 351 Wis. 2d 665, 841 N.W.2d 59 (noting that case law supports the contention that roads are easements).

¶24 The circuit court nevertheless concluded that "[e]asements need to be in writing" and that because there was no document presented that satisfies the statute of frauds, the Town did not have an easement. On appeal, Berends presents no legal authority for the proposition that public highway easements must be in writing, nor does Berends develop an argument showing why a writing is

required for a public highway easement.[8]  We need not consider arguments that are unsupported by references to legal authority.  *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶25     Regardless, we agree with the Werlers that by operation of the provisions of WIS. STAT. ch. 82, easements for public highways operate differently from traditional conveyances of interests in land.  The easement in this case exists *by operation of law* because Old Tabor Lake Road was a public highway. *See* WIS. STAT. § 82.31(2)(a).  Thus, no writing is necessary because WIS. STAT. § 706.001(2)(a) excludes from the statute of frauds an interest in land affected "[b]y act or operation of law."  The fact that Old Tabor Lake Road was used as a public highway for over fifty years is sufficient to satisfy § 82.31(2)(a) and conclusively establishes that the Town had a valid easement.[9]

¶26     Next, the Werlers claim that the circuit court erred by finding that Old Tabor Lake Road was abandoned before the easement was transferred to the Werlers.  A highway "shall be considered discontinued" if it is "entirely abandoned as a route of vehicular travel" and had no highway funds spent on it for

---

[8] *But see **Negus v. Madison Gas & Elec. Co.***, 112 Wis. 2d 52, 58, 331 N.W.2d 658 (Ct. App. 1983) ("The assignment of an easement as an interest in land is governed by [WIS. STAT.] ch. 706."); WIS. STAT. § 706.001(1) ("[T]his chapter shall govern every transaction by which any interest in land is created, aliened, mortgaged, assigned or may be otherwise affected in law or in equity."); WIS. STAT. § 706.02 (listing the formal requirements for transactions under § 706.001(1)).

[9] Berends also argued before the circuit court that the Town merely had a license.  We disagree with Berends' assertion.  An easement is an interest in land, and the rights granted by an easement are not revocable at the will of the grantor.  *Negus*, 112 Wis. 2d at 58.  A license is not an interest in the land itself, and a license is revocable by the grantor.  *See **id.***  We agree with the Werlers that a public highway cannot be a license granted to the government by the landowner because that would allow a public highway to cease to exist based on the whims or the death of the landowner.

five years. WIS. STAT. § 82.19(2)(b)2. Discontinuance under § 82.19 must be proven by clear and convincing evidence. *Town of Schoepke v. Rustick*, 2006 WI App 222, ¶¶11-14, 296 Wis. 2d 471, 723 N.W.2d 770.

¶27 In this case, the circuit court found, based on the evidence in the record, that "Old Tabor Lake Road was abandoned by the Town … after [it] constructed Tabor Lake Drive which was sometime in the 1990s." According to the court, the Town "stopped all maintenance at least five years prior to 2005 and 2007 and therefore did not expend any funds on the maintenance," and Old Tabor Lake Road "was not open to the public as a thoroughfare" because the Werlers controlled access to the road's southern entrance "through the use of a gate and a boulder."

¶28 On appeal, the Werlers assert that this evidence is "drastically insufficient to constitute clear and convincing evidence that Old Tabor Lake Road was 'entirely abandoned' under" WIS. STAT. § 82.19. In support, the Werlers rely heavily on *Markos v. Schaller*, 2003 WI App 174, 266 Wis. 2d 470, 668 N.W.2d 755, which they claim is "virtually indistinguishable" from this case. In *Markos*, the dispute involved whether a portion of a road had been entirely abandoned under WIS. STAT. § 80.32(2) (1997-98), the previous version of § 82.19(2)(b)2. *Markos*, 266 Wis. 2d 470, ¶1. There, no highway funds were expended on the disputed portion of the road for more than five years, and the property owners had erected gates and controlled who had permission to access the road. *Id.*, ¶¶5-10. Nevertheless, the plaintiffs, and the prior owners, accessed their property using a portion of the road that crossed the defendants' property. *Id.* Ultimately, we held that a road was not entirely abandoned even though the road was used only by the

property owners to access their land.[10]   *Id.*, ¶12 n.5, ¶¶18-20; *see also **Lange v. Tumm***, 2000 WI App 160, ¶¶9-10, 237 Wis. 2d 752, 615 N.W.2d 187 ("The key inquiry is whether the highway has remained open to all who had occasion to use it.").

¶29    We agree with the Werlers that the circuit court's finding that Old Tabor Lake Road had been entirely abandoned prior to the 2007 Resolution was clearly erroneous.    Under WIS. STAT. § 82.19(2)(b)2., a highway "shall be considered discontinued" provided that *both* requirements are met.    One requirement was indisputably met: the Town had not spent highway funds on Old Tabor Lake Road for over five years.   *See* § 82.19(2)(b)2.   As to the second requirement, the record does not support the court's finding that Old Tabor Lake Road had been "entirely abandoned as a route of vehicular travel."   *See **id.***   The court specifically found, "based upon the testimony of the Werlers and

---

[10] Berends attempts to distinguish ***Markos v. Schaller***, 2003 WI App 174, 266 Wis. 2d 470, 668 N.W.2d 755, on several bases that we do not find persuasive.  In general, Berends claims that this case is different from ***Markos*** because the Town did not have an easement over Old Tabor Lake Road.  However, as we determined above, the Town did have a valid easement. Further, Berends claims that "the roadway [in ***Markos***] remained fully usable by the public," whereas "Old Tabor Lake Road was not fully usable by the public after 2000, when Berends replaced much of the roadway on his property with grass."  The court in ***Markos*** specifically rejected this argument when it stated that "[a]n owner may not convert a public highway to a private road by taking control of a road and leading others to believe that they need permission to use it, even when the state or local government has discontinued maintenance of the road." *Id.*, ¶14.  Like in ***Markos***, at "no point in time" did Berends "obtain[] the right to treat the public highway as his … private property."  *See **id.***  Berends' limitation of the use of, or destruction of, Old Tabor Lake Road does not mean that it was entirely abandoned under the law.

We also note that Berends cites an unpublished per curiam opinion in an attempt to narrow or distinguish ***Markos***'s holding.  Berends' citation to an unpublished per curiam opinion is a violation of WIS. STAT. RULE 809.23(3).  Under RULE 809.23(3)(a), "[a]n unpublished opinion may not be cited in any court of this state as precedent or authority … except as provided in par. (b)," which pertains to authored opinions.  RULE 809.23(3)(a), (b).  A per curiam opinion is not an authored opinion.  We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions.  *See* WIS. STAT. RULE 809.83(2).

Mr. Berends," that Old Tabor Lake Road is "still used by [the] Werlers to the current date." Indeed, the record included evidence that Berends, as well as other lakeshore neighbors, continued using Old Tabor Lake Road. This evidence is sufficient under *Markos* to establish that Old Tabor Lake Road was not "entirely abandoned."

¶30 Berends next challenges the 2007 Resolution, claiming that the Town intended to create, rather than transfer, an easement. The 2007 Resolution provided, in pertinent part, as follows:

> It appearing that all of the affected property owners received the appropriate notice and that in addition, said notice was published in accordance with the law and it further appearing that all parties will have access as shown on the final Tabor Lake Road Relocation Project Map … pursuant to easements designated on said map;
>
> Now, therefore, be it resolved by the Town [b]oard … that Old Tabor Lake Road is hereby vacated subject to the following:
>
> 1. An easement is hereby created in favor of [the Werlers], their heirs and assigns, for ingress, egress and utilities over and across the following described parcel of land ….

¶31 According to Berends, the 2007 Resolution "is a legislative act," and our "analysis of the Town's decision must therefore [be] a matter of statutory interpretation." Assuming, without deciding, that the 2007 Resolution was a legislative act, we agree that we are to review that resolution—which is a highway order under WIS. STAT. § 82.12(2)—as we do other written instruments, including statutes. *Cf. Walt v. City of Brookfield*, 2015 WI App 3, ¶19, 359 Wis. 2d 541, 859 N.W.2d 115 (2014) (stating that we review court orders and judgments as we do other written instruments). The purpose of our interpretation is to discern the meaning of the 2007 Resolution. *See Landis v. Physicians Ins. Co. of Wis.*, 2001

WI 86, ¶14, 245 Wis. 2d 1, 628 N.W.2d 893; *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 (explaining that we assume intent is expressed in the text of the statute). To this end, we give the text its common, ordinary, and accepted meaning and interpret that language "in the context in which it is used; not in isolation but as part of a whole; in relation to the" surrounding language. *See Kalal*, 271 Wis. 2d 633, ¶¶45-46. Further, we interpret the text of a written instrument reasonably, to avoid absurd or unreasonable results. *See id.*

¶32 Here, the meaning of the 2007 Resolution is clear. It plainly demonstrates that the Town sought to ensure "that all parties will have access" to Tabor Lake Drive after the Town vacated Old Tabor Lake Road. Further, the 2007 Resolution is clear that Old Tabor Lake Road was "vacated subject to" the Werlers' easement "for ingress, egress and utilities," which maintained the same access to Tabor Lake Drive that the Werlers and the previous owners of the property previously enjoyed to Old Tabor Lake Road.

¶33 Berends argues, however, that the Town's use of the term "create" in the 2007 Resolution, rather than "transfer," suggests that the Town intended to give the Werlers a new easement instead of transferring the ownership of an existing one. Berends relies on dictionary definitions of those terms and asserts that because the Town used the word "create," which is defined as "to bring into existence," the Town did not "intend[] to transfer an existing easement." Thus, Berends contends that because "the Town did not have the legal authority to create a new easement on property it did not own," the 2007 Resolution "had no legal effect."

¶34   We agree with the Werlers that Berends' argument improperly puts form before substance and fails to appreciate other definitions. "Create" is also defined as "to invest with a new form, office, or rank" and "to produce or bring about by a course of action or behavior." *Create*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/create (last visited Nov. 4, 2024). Either of these definitions would appropriately describe the Town's intended action in this case, without needing to bring something new into existence. Language "should not be applied with a hyper-technicality that swamps common sense." *See **Dorbritz v. American Fam. Mut. Ins. Co.***, 2005 WI App 154, ¶13, 284 Wis. 2d 442, 702 N.W.2d 406 (citation omitted). Whether the Town used the word "create" or "transfer," the 2007 Resolution's meaning and purpose is plain: to leave the Werlers with right-of-way access they had previously enjoyed after the Town vacated Old Tabor Lake Road. The Town was cognizant that moving the road meant that the Werlers no longer had the same access to their property, and the Town sought to protect the Werlers' access by transferring or retaining a portion of that public right-of-way specifically for the Werlers.[11]

¶35   In summary, we conclude that regardless of how the Town originally gained an interest in Old Tabor Lake Road, the Town had an easement over Berends' and the Werlers' properties because Old Tabor Lake Road was a public highway under our state statutes. The Town then assigned the Werlers a portion of that easement before it vacated Old Tabor Lake Road by complying with the

---

[11] Berends does not appear to challenge either the circuit court's or the Werlers' assertion that an easement, if held, may be transferred. *See **Negus***, 112 Wis. 2d at 58. Although Berends challenges the Werlers' citation of the RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES, he does not specifically argue that if the Town had a valid easement, then it could not transfer its easement to the Werlers. Berends also does not assert that the 2007 Resolution failed to comply with the statute of frauds.

terms of WIS. STAT. chs. 82 and 706.[12]  The circuit court's order is reversed on this basis.

## II. Berends' Appeal

### a. Limiting the easement finding

¶36    Berends' first argument on appeal is that because the circuit court concluded that the Town did not have an easement and could not have transferred an easement to the Werlers, "the court erred by limiting its finding by stating that the Werlers have no easement to only a part of the Berends Lot, leaving a possible interpretation that the Town … did convey to the Werlers an easement to part of the Berends Lot."  According to Berends, the court's order "should have read, 'The Werlers do not have an easement to the Berends property.'"

¶37    Our conclusion in the Werlers' cross-appeal determines this issue. The Town granted the Werlers a valid easement within the 2007 Resolution. Therefore, we agree with Berends that the circuit court erred, but the court did so by failing to conclude that the Werlers *have an easement* over Berends' property as described in the Town's 2007 Resolution.[13]

---

[12] The Werlers also contend that the circuit court violated their due process rights by deciding pre-trial that the Town had a valid easement and then vacating that decision post-trial, when the issue could no longer be litigated.  Because we reverse the court's decision on this issue, we need not address whether the Werlers' due process rights were violated.

[13] Given our conclusion on this issue, we do not address the Werlers' alternative argument that we should affirm their continued access to the existing driveway as an easement by estoppel.

### b. *"Access" over the Berends Lot*

¶38 Berends' second argument is that the circuit court erred by ruling, based on "the concession of the parties," that the "Werler[s] still ha[ve] access to the existing driveway on Werler Lot 2 over the Berends' property." According to Berends, the court "evidently struggled with the contradiction that Berends adamantly denied that the Werlers have any easement to his property, but [Berends] continues to accommodate the Werlers by permitting them to use his property to drive to their driveway."

¶39 Again, this issue is resolved by our determination that the Werlers have an easement over Berends' property. Due to the Werlers' easement, their use of Berends' property to access their driveway is not merely by permission. Thus, the circuit court properly determined that the Werlers have access to their existing driveway on Werler Lot 2, but the access results from the easement and not from Berends' permission.

### c. *Berends' rights to Werler Lot 3*

¶40 Berends' third argument is that the circuit court should have dismissed the Werlers' cause of action for trespass because the deed by which the Werlers' predecessors in title acquired their property excepted and reserved to the grantor ownership and access across Old Tabor Lake Road (hereinafter, Mares Deed 1). Mares Deed 1 provided, in pertinent part, as follows: "Excepting and reserving from said land a forty foot strip of land running east and west along the south part of said tract and thru parts of said tract along the east edge of said tract now used as a highway." Based on this language, Berends claims that he either owns fee title to this strip of land because the word "excepting" means that the former owner did not convey it to the Werlers' predecessor or the word

19

"reserving" means that Berends has access rights to this property. On that basis, Berends claims that the court "erred when it failed to enjoin the Werlers from excluding or interfering with Berends'[] access, whether through locks, gates, boulders, vegetation, or other means" and when it found "that Berends ha[d] trespassed on the southern section of [Old Tabor Lake Road] and grant[ed] the Werlers $100 [in] damages for the trespass."

¶41    In contrast, the Werlers argue that once the Town discontinued Old Tabor Lake Road, the land underneath the road on Werler Lot 3 belonged to them in fee simple. According to the Werlers, it is irrelevant whether Mares conveyed Werler Lot 3 "reserving" or "excepting" any portion of it because none of the property was subsequently conveyed to the predecessor in title of the Berends Lot: "There is no chain of title [of an interest in Werler Lot 3] from Mares to Berends." Thus, the Werlers argue, Berends has no claim of ownership or easement.

¶42    We agree with the Werlers that regardless of the meanings of the terms "excepting" and "reserving" contained in Mares Deed 1, the deed conveying the Berends Lot does not demonstrate an intent to convey other land or an interest in other land.[14] *See* **Gilbert v. Geiger**, 2008 WI App 29, ¶10, 307 Wis. 2d 463, 747 N.W.2d 188 ("The primary source for determining intent is what is written within the four corners of the deed."); **Traeger v. Traeger**, 35 Wis. 2d 708, 712-13, 151 N.W.2d 681 (1967) (observing that "an exception or a reservation depends not so much upon the words used as upon the nature of the right or thing

---

[14] The construction of a grant in a deed is a question of law that we review de novo. **Lucareli v. Lucareli**, 2000 WI App 133, ¶5, 237 Wis. 2d 487, 614 N.W.2d 60.

excepted or reserved" and that "the meaning can best be arrived at by ascertaining, if possible, the intention of the parties, as evidenced by the words of the deed, the object they had in view, and the circumstances under which the deed was executed" (citation omitted)).

¶43     The deed contained in the record clearly conveyed, from Mares to Berends' predecessor in title, a fee simple with a legal description of the Berends Lot (hereinafter, Mares Deed 2). Mares Deed 2 unambiguously conveyed no other land or interest in land such as that exempted or reserved in Mares Deed 1. Thus, any claim that Mares intended to retain ownership of Old Tabor Lake Road within Werler Lot 3, or speculation as to the reason that she sought to "exempt[]" or "reserv[e]" that land, is immaterial, given that Mares failed to transfer that alleged ownership interest in the land to Berends' predecessor.[15]

---

[15] That being said, Mares Deed 2 does include the following sentence: "Subject to easements and restrictions of record." Again, however, there is no language in Mares Deed 2 conveying an easement over the disputed strip within Werler Lot 3 to the purchaser of the Berends Lot; thus, Mares Deed 2 fails to satisfy two basic requirements of the statute of frauds: that the land and the interest conveyed be identified. *See* WIS. STAT. § 706.02(1)(b), (1)(c); *see also* **Gojmerac v. Mahn**, 2002 WI App 22, ¶24, 250 Wis. 2d 1, 640 N.W.2d 178 ("The deed granting the easement defines the relative rights of the landowners. The use of the easement must be in accordance with and confined to the terms and purposes of the grant." (citations omitted)). As the Werlers argue, "[i]t is impossible to determine the scope of rights that Mares intended to reserve when conveying Werler Lot 3, especially since an easement to travel on what was then a public highway—and for nearly 30 years afterwards—would have been wholly superfluous."

Further, property law would be reduced to chaos if owners had to search within other deeds to find evidence of a reservation of or an exception to a conveyance of land not involved in the sale. *But see* **AKG Real Est., LLC v. Kosterman**, 2006 WI 106, ¶44, 296 Wis. 2d 1, 717 N.W.2d 835 ("The long-established rule is that an express easement 'passes by a subsequent conveyance of the dominant estate without express mention in the conveyance.'" (citation omitted)). Thus, even if Mares retained certain interests in Werler Lot 3, there is no evidence that she conveyed, or even that she intended to convey, those interests within Mares Deed 2.

¶44 Berends admits that "it is true that Mares did not execute a deed explicitly granting the land under the roadway to her successors in interest to the Berends Lot," but he asserts that "there is no other claimant who (l) is a successor in interest to Mares, the last known owner of that section of the roadway; and (2) is not specifically excluded by their deed from ownership." Thus, Berends claims, "[t]he 'excepting and reserving' language benefits the Berends Lot and is an appurtenant right to the owner of the Berends Lot."

¶45 We agree with the circuit court's conclusion that, given that Old Tabor Lake Road has now been vacated or discontinued, the land belongs to the Werlers by operation of WIS. STAT. § 66.1005(1). Section 66.1005(1) provides, in pertinent part: "When any highway or public ground acquired or held for highway purposes is discontinued, the land where the highway or public ground is located shall belong to the owner or owners of the adjoining lands." The court found that the Werlers own the property on both sides of Old Tabor Lake Road in Werler Lot 3. Therefore, the land under the portion of Old Tabor Lake Road traversing Werler Lot 3 belongs to the Werlers. *See* § 66.1005(1).

¶46 Berends argues that this result "would be the case if the Town owned the land occupied by the roadway, but not when the Town did not own that land."[16] Berends fails, however, to support this claim with references to legal

---

[16] According to the Werlers,

> [i]f Mares excepted the road from Werler Lot 3 but did not convey it as part of the Berends Lot, the land would presumably have escheated to the state upon her death, as there is no record of any heir. WIS. STAT. § 852.01(3). Thus, the land would have become "public ground … held for highway purposes" within the meaning of WIS. STAT. § 66.1005.

authority establishing that WIS. STAT. § 66.1005 applies only where the municipality owns the land under the public highway in fee simple or to argue why the result, regardless of ownership, should not be the same under the circumstances here. *See Pettit*, 171 Wis. 2d at 646.

¶47    In the alternative, Berends claims that he obtained an easement by prescription to the part of Old Tabor Lake Road passing through Werler Lot 3. "An easement by prescription requires the following elements, (1) adverse use hostile and inconsistent with the exercise of the titleholder's rights; (2) which is visible, open and notorious; (3) under an open claim of right; (4) and is continuous and uninterrupted for twenty years." *Ludke v. Egan*, 87 Wis. 2d 221, 230, 274 N.W.2d 641 (1979). According to Berends, after the Werlers placed their gate and boulders to obstruct access to Old Tabor Lake Road, Berends continued to use the road by driving on it when the gate was open, by snowmobiling on it, and by walking on it. Berends further contends that this adverse use continued until the commencement of this litigation and therefore lasted more than twenty years.

¶48    As we determined above, *see supra* ¶¶26-29, Old Tabor Lake Road was a public highway until the Town vacated it in 2007. Thus, until that time, Berends would have been unable to use Old Tabor Lake Road adversely simply by traveling on that road because it was, as a matter of law, available for public travel. We agree with the Werlers, then, that "the earliest anyone could establish a prescriptive easement would be twenty years after the Town discontinued [Old Tabor Lake Road]—that is, the year 2027." Berends' alternative claim of a prescriptive easement therefore fails. Because Berends did not have an easement over Werler Lot 3, the circuit court correctly enjoined him from using it.

#### d. Zoning code setback requirements

¶49    Berends' final argument is that the circuit court erred by failing to order the removal of the pole barn and the riprap on the Werlers' property. According to Berends, the language of the zoning code clearly defines front, rear, and side yards, but the court erroneously applied these definitions to conclude that the "front" of the Werlers' property was along its eastern, rather than southern, border.  As to the riprap, Berends claims that the court erred by determining that the riprap did not constitute a retaining wall and that the riprap was not taller than three feet based on a picture introduced at trial.

¶50    We will address the pole barn first.  As it pertains to the pole barn, we agree that the circuit court's analysis is reasonable and that there is evidence in the record to support it.  As relevant to this appeal, the zoning code provides the definition of a front setback as follows:

> *Setback, front* means an open, unoccupied space on the same lot with the building between the front line of the building and the front line of the lot and extending the full width of the lot.  *Front is considered the side for which the site address of the lot is determined from and which is used to access the parcel.*  This access must be maintained and meet the driveway requirements of this chapter.

BURNETT COUNTY, WIS., CODE OF ORDINANCES § 30-4 (Oct. 14, 2024) (second emphasis added).[17]  The zoning code dictates that the setback requirements for the Werlers' property are thirty feet from the front lot line and ten feet from the side lot line.  *See* CODE OF ORDINANCES § 30-413.

---

[17]  All references to the BURNETT COUNTY, WIS., CODE OF ORDINANCES in this decision are to the October 14, 2024 amendment.  The parties do not argue that the relevant zoning code provisions have been amended since the trial in this case.

¶51 Based on the definition of front setback, the circuit court determined that the zoning code was ambiguous as it pertained to the Werlers' property. As the court explained, the zoning code definition of front setback appears to consider both the site address of the lot "and" the access point of the property. *See* CODE OF ORDINANCES § 30-4. Because the Werlers' address is on Tabor Lake Drive—to the south of the Werlers' property—but they access their driveway from Old Tabor Lake Road—to the east of the property—there is no "side" of the Werlers' property that satisfies both requirements for the front setback.[18]

¶52 Based on this purported ambiguity, the circuit court considered a letter from and the trial testimony of Jason Towne, the Burnett County Zoning Administrator, to conclude that the pole barn did not violate the setback provisions in the zoning code. The court stated that it "makes sense that the east line of the property is the front of the property because that is where the access to the property is and that is where the driveway to the front of the cabin is located off of [Old Tabor Lake Road] when [the Werlers] purchased it." Thus, the court determined that the pole barn's location—thirty-nine feet from the front and ten feet from the side of the property—complied with the setback requirements. This conclusion was not clearly erroneous.

¶53 Berends faults the circuit court for relying on Towne's testimony because Towne "fail[ed] to apply the [z]oning [c]ode as written." But, as explained above, the plain terms of the zoning code, using the conjunctive "and,"

---

[18] Because Werler Lots 1, 2, and 3 are "[a]djoining lands of common ownership," the zoning code states that they "shall be considered a contiguous parcel even if divided by a public or private road, easement or navigable rivers or streams." *See* CODE OF ORDINANCES § 30-4 (defining "Lot").

cannot be applied to Werler Lots 1, 2, and 3 because the site address is determined from a different direction than the direction used to access the parcel. We have previously explained that "[z]oning ordinances are in derogation of the common law and, hence, are to be construed in favor of the free use of private property." *HEEF Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals*, 2015 WI App 23, ¶7, 361 Wis. 2d 185, 861 N.W.2d 797 (alteration in original; citation omitted). "To operate in derogation of the common law, the provisions of a zoning ordinance must be clear and unambiguous." *Id.* Thus, when interpreting a zoning ordinance, we construe any ambiguity against the municipality and in favor of the free use of private property. *See id.* Under these circumstances, the court's interpretation, adopting the direction that the property is accessed as the "front," in reliance upon the zoning administrator's application of the zoning code, is not unreasonable. *See State v. Duychak*, 133 Wis. 2d 307, 317, 395 N.W.2d 795 (Ct. App. 1986) (observing that the terms "and" and "or" may be interpreted interchangeably if it is consistent with legislative intent); *State ex rel. Wis. Dry Milk Co. v. Circuit Ct. of Dodge Cnty.*, 176 Wis. 198, 204, 186 N.W. 732 (1922) (same).

¶54 Next, as it pertains to the riprap, the zoning code also provides setback requirements for retaining walls. As relevant under the facts of this case, a retaining wall greater than three feet tall is subject to an applicable setback of ten feet. CODE OF ORDINANCES § 30-491(a)-(c). It is undisputed that the term "retaining wall" is not defined in Chapter 30 of the zoning code; thus, the circuit court turned to dictionary definitions. *See Door Cnty. Highway Dep't v. DILHR*, 137 Wis. 2d 280, 293-94, 404 N.W.2d 548 (Ct. App. 1987) (noting that a term's ordinary and accepted meaning can be established by reference to a recognized dictionary). The court observed that the dictionary defines "retaining wall" as "a

wall that is built to keep the land behind it from sliding." *Retaining wall*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/retaining%20wall (last visited Nov. 5, 2024). The court also noted the definition of "[r]iprap" as "a foundation or sustaining wall of stones." *See supra* note 4.

¶55 Based on these definitions and the testimony provided at trial, the circuit court concluded that the riprap was not a retaining wall. According to the court, the riprap "was not a wall, but rather a support for the structure." The court's finding is consistent with the definition of riprap—i.e., that it could either be a wall or a foundation. As the Werlers argue, the "court found that the primary function of the riprap here was vertical, not horizontal: it supported the pole barn's floor and kept it up and level rather than simply pushing the dirt and keeping it from sliding sideways onto the Berends Lot." Therefore, we conclude that the court's finding that the riprap is not a retaining wall was not clearly erroneous.

¶56 Even if we were to conclude that the riprap *is* a retaining wall, we would also agree with the circuit court's finding that Berends failed to meet his burden to establish that the riprap violated the zoning code. The court specifically found that "[e]ven if the riprap was a retaining wall … no one testified or gave measurements of the height of the riprap at ten feet." On appeal, Berends argues that a photo of John standing next to the pole barn is sufficient evidence that the retaining wall is more than three feet tall. According to Berends, John testified at trial that he is five feet six inches tall; the photo introduced at trial demonstrates that the riprap is "much taller than" John; and based on that photo, Towne agreed with the statement that it "appear[s] that the riprap being used is more than three

feet tall." Thus, Berends asserts that the court erred by finding that the height of the riprap had not been established at trial.

¶57 First, we note that it appears the circuit court misstated the zoning code during its oral ruling. Prior to issuing its ruling on the riprap, the court discussed the zoning code, stating: "Any retaining wall with a height greater than three feet and less than six feet is allowed to be placed *within* a road right-of-way setback of ten feet. These retaining walls will also have a side, front, and rear setback of ten feet." (Emphasis added.) In contrast, the zoning code provides: "Any retaining wall with a height greater than three feet and less than six feet is allowed to be placed *with* a road right-of-way setback of ten feet." CODE OF ORDINANCES § 30-491(b) (emphasis added). "Within" is not the same as "with." "Within" suggests that the retaining wall could be constructed inside the ten-foot setback, while "with" means that the retaining wall would need to be constructed outside those ten feet. Thus, to the extent that the court believed that the zoning code approved of a retaining wall higher than three feet within the ten-foot setback, that belief was clearly erroneous.

¶58 Regardless, we conclude that the circuit court's finding that the height of the riprap was not conclusively established at trial was not clearly erroneous. The actual height of the riprap is a question of fact, and the court certainly could have determined that the photograph was not credible evidence of its height. *See Rice v. United States*, 179 F.2d 26, 28 (D.C. Cir. 1949) ("[P]erspective in two dimensional pictures does not give one an accurate idea of relative sizes and distances without some ascertainable scale to which various objects can be compared."); *Somersall v. New York Tel. Co.*, 418 N.E.2d 373, 376 (N.Y. 1981) ("Interpretation of the photographs in evidence involved evaluations of angle and perspective that are the essence of the jury's function.").

¶59 Aside from the photograph, Berends does not point to any additional evidence presented at trial regarding the height of the riprap inside the ten-foot setback area. For example, it does not appear that the Werlers were asked how high they built the riprap—although John was asked about the height of the pole barn—or that Berends was asked to provide an opinion regarding the riprap's height. Even Towne, who opined that the riprap is more than three feet tall, did so based on his review of the photograph, not based on his own observation of the property. A photograph may not always accurately demonstrate the relative size or relation of objects at varying distances and vantage points, and there does not appear to be additional evidence in the record to support a finding regarding the height of the riprap within the side setback area. Accordingly, we conclude that the circuit court's finding that Berends had not met his burden to prove the riprap's actual height within the setback area was not clearly erroneous.

¶60 Thus, on remand, we direct the circuit court to declare that the Werlers have an access easement over the Berends Lot as described in the 2007 Resolution, that the Werlers will only need to move their new driveway access to Werler Lot 1 if the driveway accesses Old Tabor Lake Road outside of the easement, and that the injunction enjoining the Werlers from using Old Tabor Lake Road on Berends' property does not apply within the easement.

¶61 No costs to either party.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.